## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JAMES P. WHITMAN, ET AL., ETC., ET AL. v. DUDLEY C. WALTRIP, ET AL., T/A, ETC.

June 16, 1969.

Record No. 6955.

Present, All the Justices.

*David N. Montague* (*Montague and Montague*, on brief), for appellants.

*Henry L. Lam* (*Lam, Hudgins and Mann*, on brief), for appellees.

BUCHANAN, J., delivered the opinion of the court.

In May 1967 Dudley C. Waltrip and Mary S. Waltrip applied to the State Corporation Commission, pursuant to §§ 5.1-7 and 5.1-8 of the Code, for license to establish and operate an airport at a described location in James City County, Virginia, for use by civil aircraft engaged in commercial aviation. The name given in the application was by permission of the Commission changed to Jamestown Airport.

By order of May 29, 1967, the Commission's Director of the Division of Aeronautics was directed to investigate the application and report to the Commission on the matters stated in the order; and the applicants were directed to publish a notice of the application, prepared by the Commission, stating that those objecting should notify the Director.

The Director filed his report of investigation on July 14, 1967, in which he stated, in substance, that the proposed airport was to be constructed on about 189 acres of land owned by the applicants approximately one and one-half miles southwest of the City of Williamsburg, fronting on the east side of State Route 617 and approximately three-fourths of a mile south of its intersection with State Route 31; that the initial landing area would be graded 3400 feet long and 300 feet wide with a paved runway 3200 feet long and 100 feet wide; that the runway would lie on compass headings of 310 degrees and 130 degrees; that the southeast end of the runway would be about 200 feet from College Creek and the northwest end about 2500 feet from Route 617, and that "This means that the approach to runway 13 would be over property owned by the applicant[s]. The approach to runway 31 would be over College Creek and swampland which is uninhabited."

The report further stated that aircraft traffic using Jamestown Airport would not conflict with that of any other airport and that the proposed airport "will meet or exceed the minimum requirements for licensing as required in Rule 19" of the Commission, and that "Federal airspace clearance has been obtained and a copy is attached." He concluded his report with the statement:

"The proposed Jamestown Airport meets or exceeds all safety criteria as established by the Virginia Aviation Law and its Rules and Regulations. I recommend that the license be granted."

On receipt of this report the Commission, on July 17, 1967, entered an order stating that it had received objections to the application and fixing October 3, 1967, for hearing the applicants and all parties in interest, and directing that notice be given to persons and organizations named in the order.

At the hearing on October 3, the applicants introduced Willard G. Plentl, Director of Aeronautics, and Larry Waltrip, son of the applicants. The former read his report to the Commission and testified additionally that the minimum requirements of the airport regulations took into consideration the safety of the surrounding area.

Asked about the density of the population around the proposed airport, the witness replied that the Assistant Manager of the Washington Area Office of the Federal Aviation Administration accompanied him on the inspection and expressed the opinion that in view of the distance from the end of the runway to the adjoining property there was no hazard at all. Waltrip, the son of applicants, testified that the applicants were financially able to construct the runway.

A member of the Board of Supervisors of James City County testified that the Board considered the matter and concluded that it had no objection to the location of this airport at the place requested.

Witnesses for the interveners included the Chairman of the Williamsburg School Board, a representative of the Parents and Teachers Association of the Rawls Byrd School, the President of Birchwood Park Civic Association and an aeronautics engineer. The substance of their evidence was that the airport applied for would be a source of danger to the people living in the area, would diminish the value of their property, and cause noise and distraction to the pupils in the schools. It was admitted that an airport was needed in the county; but it was asserted in general terms that another place could be found for it.

James P. Whitman, the aeronautics engineer referred to, agreed that Williamsburg and James City County needed an airport "very badly". Of the one proposed he said that takeoff traffic to the southeast and landing traffic to the northwest "present quite a safe situation". He thought a northwest take-off presented a problem and that "Reorientation by approximately twenty degrees of the runway would almost completely alleviate the situation."

A consulting engineer, introduced by the applicants, testified that the distance from the end of the runway to the subdivision referred to in the evidence was approximately one-half mile, and that the school buildings in the area were about three-fourths mile from the end of the runway and about 450 feet north of a projection of the center line of the runway.

After hearing the evidence a majority of the Commission, Chairman Hooker dissenting, found that the proposed airport "meets or exceeds all safety criteria established by Chapter 1 of Title 5.1 of the Code and the Rules and Regulations of the Commission adopted pursuant thereto; and that the license applied for should be granted."

It was accordingly ordered that the applicants be authorized to

establish, operate and conduct an airport for the purpose, by the name and at the place described in the order and in the application.

In the supporting opinion by Commissioner Catterall it was pointed out that one of the duties imposed by statute on the Corporation Commission was the promotion of aviation (Code § 5.1-3 (3)). He observed that an airport near a residential neighborhood is bound to be objectionable to most of the neighbors, but that "The airport will be built subject to state regulations, and there will be no safety hazards other than those inherent in flying. * * Since this airport complies with all the requirements of the laws and regulations, the Commission could not, without ignoring the provisions of the applicable statute and its own regulations, refuse to issue the permit."

The objections by the interveners here, *i.e.*, that the value of the properties in the area would be diminished, that the noise of the planes would be disagreeable and that the menace of accidents would be present, were made and overruled in *Batcheller* v. *Commonwealth*, 176 Va. 109, 115 *ff.*, 10 S.E.2d 529, 531 *ff.* We said in that case that "Mere apprehension of injury from the falling of planes is not sufficient to warrant the denial of a permit for an airport."

Section 5.1-8 of the Code provides that before issuing a permit to operate an airport the Commission shall make the investigation required by that statute.

In *Lillard* v. *Fairfax Airport Authority*, 208 Va. 8, 155 S.E.2d 338, we said this section should be applied meaningfully. The Commission has so applied it, has heard all of the evidence offered by both parties and rendered its judgment.

The Constitution of Virginia, § 156 (f), requires that the action of the Commission "shall be regarded as prima facie just, reasonable and correct".

The evidence presented an issue of fact and "We have repeatedly held that on appeal we will not override the Commission's findings of fact where there is evidence upon which to base them." *Users Association* v. *W&OD Railroad*, 208 Va. 1, 5, 155 S.E.2d 322, 324.

The judgment appealed from is accordingly

*Affirmed.*