## CIRCUIT COURT OF FREDERICK COUNTY

Pamela Fishel

v.

Frederick County School Board

May 17, 1988

Case No. L86-145

By JUDGE ROBERT K. WOLTZ

This is a petition under § 22.1-87 to review an action of a school board. The section provides that an aggrieved parent may petition, and this petition will be considered that of the parents though it is brought in the name of their child by them as next friends. The grievance expressed in the petition is expulsion of the pupil by the school board for alleged violation of its regulations concerning use or possession of illegal, controlled or imitation controlled drugs.

Under the provisions of the Code section, the action of the school board on review is to be sustained "unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion." Consequently, the burden is on the petitioners to show that the action of the school board was legally improper in one of the respects stated. I find that the petitioners have not sustained this burden, and the action of the board is sustained.

School boards have constitutional authority: "The supervision of schools in each school division shall be vested in a school board . . ." Const. [1971], Article VIII, § 7. In this context, "The power to operate, maintain and supervise public schools in Virginia is, and always has been, within the exclusive jurisdiction of the local

school boards . . ." *Bradley v. School Board*, 462 F.2d 1058, 1067 (4th Cir. 1972), *aff'd* 412 U.S. 92 (1973), citing *School Board of Prince William County v. Griffin*, 204 Va. 650 (1963).

Code § 22.1-277 provides for suspension or expulsion of pupils from school for sufficient cause. Section 22.1-278 directs school boards to adopt regulations governing suspension and expulsion of pupils. The regulations "shall be consistent with the welfare and efficiency of the schools, their pupils and staff, shall set forth the grounds for suspension and expulsion from school and the procedures to be followed in such cases in the school division." No complaint is made that the pupil's procedural rights were violated. For some reason, the case was not heard in this Court until nearly a year after the petition was filed.

Under the school board regulations, 9-35(C)(2), "The use or possession of illegal drugs, controlled substances, imitation controlled substances, including imitation marijuana, or any mood-altering chemicals, including inhalants, is prohibited." For violation immediate suspension occurs and eventual hearing by the school board, with the possibility of expulsion. In this case, the evidence shows that the student body in groups have school board policy explained to them and a student handbook containing, among others, this provision is distributed.

The evidence shows that a female pupil named Whitney Racey had been called to the administrative office of the school. She was fearful of getting into trouble so on the way she stopped in one of the rest-rooms and gave five pills to Pamela Fishel, the subject of these proceedings. These items were pink and heart-shaped, generally called "pink hearts" and known generally in the student body by that name and to be "speed" or amphetamines or a "look-alike" for amphetamines. Pamela stated she did not know what the pills were until Whitney told her they were pink hearts. Word concerning Whitney and Pamela reached the assistant principal who, with the principal, confronted Pamela, asking what she had in her pocketbook. Pamela at first admitted to having cigarettes and then, in the apprehension of having her pocketbook searched, voluntarily took out the five pink hearts.

In accordance with policy, the local police department was summoned and field testing of the pills disclosed the presence of no controlled substances. They were likely caffeine, containing 200 milligrams of that substance.

The petition asserts that the allegation that the pupil possessed imitation controlled substance is false, that the school policy does not cover these substances, and on oral argument claim was made that the regulation is impermissibly vague. In addition, it is asserted that the penalty imposed on the pupil is excessive.

Except for excessive penalty, the objections are related to one another. Petitioners cite *McEntire v. Brevard County School Board*, 471 So. 2d 1287 (Fla. App. 5th Dist. 1985). That case is not particularly helpful here as it involved questions of representing certain pills to be controlled substances and because the school board regulation expressly adopted by reference the statutory definition of controlled substances. Also cited in *Bertens v. Stewart*, 453 So. 2d 92 (Fla. App. 2d Dist. 1984), which while acknowledging that there was greater leniency with regard to vagueness in administrative rules than in penal statutes, held that possession of vitamin tablets by a pupil did not violate a school regulation against possession of medicine. This was on the basis that under varying circumstances vitamins could be considered either as medicines or as foods.

After something of a colloquy between petitioner's counsel and the division superintendent concerning the provisions of the regulation, at page 12 of the transcript counsel said, "This doesn't meet the statutory test," to which the division superintendent replied, "It does meet our school board regulation test. We don't even have to debate whether it meets the statutory test." In that response lies the basis for the present decision.

The school board adopted the regulation and its interpretation of its own regulation should be given considerable deference. That the use of illegal drugs is a matter tearing at the vitals of our society must have been well known to the school board. This school board, having thousands of pupils for whose care and tutelage it is responsible, could not help but be acutely aware of the difficulties posed and the dangers to their charges presented by the presence of illegal drugs, whether

in the form of statutorily defined controlled substances or anything else directly related to them, including look-alikes or imitations.

The pills possessed by this pupil may not precisely fit the statutory definition of "imitation controlled substance" as set forth in subsection B of § 18.2-247. Nevertheless, the school board regulation containing the quoted phrase does not necessarily incorporate the statutory definition. While the school board cannot play Humpty Dumpty of *Through the Looking-Glass* and say that whatever words it uses mean just what it chooses them to mean, the school board does have a right to interpret the meaning of regulations established by itself so long as that interpretation is a rational one.

*Wood v. Strickland*, 420 U.S. 308 (1975), applied restrictively to the suit of expelled students against a school board under 42 U.S.C. § 1983. Though limited to the frame of a civil rights proceeding, some of the language used is apropos here. In that case, three sixteen-year-old tenth grade girls decided to "spike" the punch used at a school function. This they did with a beverage which was later determined to contain 3.2% alcohol. The school board had adopted a policy against the possession or use of "intoxicating beverages" on school premises or at school functions. State statute defined "intoxicating liquor" as beverages containing more than 5% alcohol. The lower federal court found for the petitioners by interpreting the school regulation to mean what the state statute said rather than the interpretation given by the school board to its own regulation.

The Supreme Court noted that the school board expressly based expulsion on bringing "alcoholic beverage" onto school premises and that the girls involved admitted knowing they were doing something wrong and punishable. At page 325 the Court stated:

> [T]he Court of Appeals was ill advised to supplant the interpretation of the regulation of those officers who adopted it and are entrusted with its enforcement.

Further, at page 326:

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.

Of the same import is *Board of Education v. McCluskey*, 458 U.S. 966 (1982). The same principles apply here in judicial review under § 22.1-87. The school board is constitutionally vested with authority and consequently the responsibility for operating the public schools in the school division. In the discharge of these responsibilities, including the care and protection of its educational wards, it was faced with the monstrous problem of illegal drugs. It then proceeded to adopt a regulation to combat this evil. In this case, by finding the pupil had transgressed the regulation it gave its own interpretation to this, its own regulation, which interpretation was not unreasonable. In doing this, there is no showing that the board "exceeded its authority, acted arbitrarily or capriciously, or abused its discretion." That being so, the statute requires that its action be sustained. The right of judicial review in cases such as this does not give the reviewing court authority to sit as a super school board or substitute for what has been done that which it may feel would have been more appropriate.

Complaint is also made that the sanction of expulsion here was too extreme under the circumstances shown, including the previous school record of the pupil expelled. The parents particularly argued against expulsion at the hearing. To some, and especially to the parents of the expelled child, this penalty may be draconian. That sanction, however, is authorized both by statute and under the regulation invoked. Were this Court to presume a greater "wisdom and compassion," that would still not be sufficient basis to substitute its decision in this regard for that of the body primarily responsible.