## CIRCUIT COURT OF THE CITY OF WINCHESTER

Austin Woods
and Michelle Woods

 v.

Winchester School Board

July 15, 1999

Case No. (Law) 98-213

BY JUDGE JOHN E. WETSEL, JR.

This petition for review of a high school student's expulsion for making a bomb threat came before the Court on July 14, 1999. The parties appeared with their counsel: Timothy S. Coyne, Esquire, for the Petitioners; and Douglas L. Guynn, Esquire, for the Respondent. Thereupon, the findings of fact were reviewed, all of the prefiled exhibits were admitted, and the case was argued.

The issues in this case are whether a school system may complete its disciplinary process and formally expel a student for an infraction committed while a student in the school system, despite the fact that, between the incident and the expulsion, the student withdrew from the school system, and, if so, whether the disciplinary process was arbitrary or violated the Petitioners' constitutional due process rights. This court has decided that the expulsion was proper and that the Petition should be dismissed. For ease of reference, the administrative record is cited by Tab and by page "(Tab __, AR __)".

## I. *Statement of Material Facts*

Petitioner Austin Woods is a minor under the age of eighteen, who formerly attended John Handley High School in the City of Winchester, Virginia. Petitioner Michelle Woods is the natural mother of Austin Woods.

The Winchester City School Board is the local body responsible for operating the Winchester Public Schools. Dr. Glenn Burdick is the Superintendent of Winchester Public Schools. Dr. Ricky Leonard is the principal of Handley High School. Mr. John Taylor is the Director of Parent and Student Services for Winchester Public Schools.

Handley High School is the high school operated and supervised by the School Board. Daniel Morgan Middle School is the middle school operated by the School Board.

On November 4, 1998, school employees at Handley High School discovered receipt of an electronic mail (e-mail) bomb threat sent on November 3 at 18:17:14 Pacific Standard Time, which stated:

> There is a bomb at John Handley High School. And another at Daniel Morgan Middle School. It will explode if you attempt to defuse it. I will call with instructions. The cult of skafia claims full responsibility for this action. (Tab A, AR 1.)

Upon discovery of this message, school officials notified law enforcement officials and completely evacuated the students and staff at Handley High School and Daniel Morgan Middle School on November 4, and they began an administrative investigation. The investigation revealed the possible involvement of Austin Woods, a tenth-grade pupil at Handley High School. (Tab C, AR 4; Tab D, AR 7-9; Tab R, AR 56-59.)

Through the investigation of local law enforcement officials, the electronic message eventually was traced to a computer located at 300 Shenandoah Avenue in the City of Winchester, where Austin Woods resided with his mother, Michelle Woods. School officials cooperated with the investigation, and an undisputed determination was made through the help of the High School technology instructor that the Austin hard drive revealed the same threat message. (Tab B, AR 2; Tab H, AR 16; Tab R, AR 64-66.)

Dr. Ricky L. Leonard, principal of John Handley High School, initially led the school's disciplinary investigation, and he was given initial information implicating Austin Woods in the bomb threat.

On November 6, 1998, Austin Woods moved from the City of Winchester to Elkins, West Virginia, with his natural father, and Austin Woods did not attend classes at John Handley High School after November 6, 1998.

On November 10, 1998, George Woods, Austin Woods' father, called John Handley High School and requested that Austin Woods' transcripts be sent to Elkins High School in Elkins, West Virginia. Also on November 10, 1998, Michelle Woods spoke with Ms. Hart in the guidance office at Handley High School and was advised by Ms. Hart that she would mark Austin as withdrawn on the school records. While the official Winchester school registration and enrollment records indicate that Austin Woods had not officially withdrawn until December 14, 1998, when the School Board voted for his expulsion, the Court finds that Austin Woods formally withdrew from Handley High School on November 10, 1998.

Sometime after the November 4, 1998, bomb threat, the Winchester Police Department identified Petitioner Austin Woods as a suspect in the making of the bomb threat. On or about November 10, 1999, a Petition was issued by the Juvenile and Domestic Relations District Court for the City of Winchester charging Austin Woods with communicating a bomb threat in violation of Virginia Code § 18.2-83.

Because Austin Woods absented himself from school soon after November 4, 1998, Dr. Leonard telephoned the home of Austin Woods on Wednesday evening, November 11, 1998. Dr. Leonard spoke with Michelle Woods, Austin Woods' mother, who refused Dr. Leonard's request to meet or talk with Austin Woods. Ms. Woods declined to cooperate with the disciplinary investigation into the bomb threat and the involvement of her son. Based upon the information available to Dr. Leonard, he suspended Austin Woods from school for seven days for participating in making a bomb threat and referred the matter to Mr. John Taylor, Director of Parent and Student Services for the Winchester Public Schools, with a recommendation for expulsion. Dr. Leonard memorialized his contact with Michelle Woods and his disciplinary action in a letter dated November 13, 1998, and transmitted to Michelle Woods at 300 Shenandoah Avenue, Winchester, Virginia. (Tab C, AR 4.)

In the November 11, 1998, telephone call, Michelle Woods told Dr. Leonard that Austin was no longer a student at Handley High School and that he was then living with his natural father in West Virginia. On November 12, 1998, Austin Woods was officially enrolled on the records as a student at Elkins High School in Elkins, West Virginia.

On November 17, 1998, Mr. Taylor and Dr. Glenn Burdick met with Michelle Woods to continue the disciplinary investigation; Austin Woods did not attend the conference. Michelle Woods did not challenge the contention that Austin Woods was involved in the bomb threat, and she only made unsubstantiated suggestions to Mr. Taylor and Dr. Burdick of alleged

mitigating circumstances. At the conference on November 17, 1998, Dr. Burdick, Mr. Taylor, and Michelle Woods agreed that Michelle Woods, Austin Woods, and Mr. Taylor would meet on November 25, 1998, to discuss all the issues and determine the next course of action.

On November 25, 1998, Michelle Woods called Mr. Taylor to cancel the meeting scheduled for that same day. In a telephone conversation with Michelle Woods on November 30, 1998, Mr. Taylor advised Michelle Woods that the disciplinary matter must be referred to the Winchester School Board to bring the matter to closure. In a confirmatory letter of December 1, 1998, Mr. Taylor notified Michelle Woods that based upon the evidence presented to him thus far, he must recommend to the School Board that Austin Woods be expelled from Winchester Public Schools attendance. He also informed Michelle Woods that the School Board would next meet on Monday, December 14, 1998, at the central administrative offices and that she and Austin Woods had a right to appear before the School Board at that time and present to School Board members "any information you wish them to consider before they take action on my recommendation." (Tab E, AR 11-12.)

By letter dated December 8, 1998, from legal counsel for Austin Woods, Mr. Taylor was notified that Austin Woods "will not be appearing before the School Board at its meeting on December 14, 1998," asserting that Austin Woods purportedly had withdrawn from the Winchester Public Schools and arguing that the School Board "does not have the power to take any action against him, including expulsion." This letter did not deny or seek to refute the basic contention that Austin Woods shared responsibility for the bomb threat to Handley High School. (Tab G, AR 14.)

The School Board met on December 14, 1998, in Executive Session to discuss student discipline matters and conducted a hearing on the recommended expulsion of Austin Woods. Michelle Woods and Austin Woods' legal counsel appeared before the School Board; Austin Woods did not appear. The School Board Chairman explained to Michelle Woods and legal counsel that the School Board was convened in Executive Session to hear evidence in the matter concerning Austin Woods' e-mailing of a bomb threat to Handley High School. The School Board Chairman also advised Michelle Woods and legal counsel that the School Board intended to take action that evening on the recommendation that Austin Woods be expelled from school, if it found that Austin Woods had, in fact, sent the bomb threat. In response to the invitation to Michelle Woods and legal counsel to address the School Board and present any information they wished the School Board to consider, Austin Woods' counsel did not offer any refutation regarding the involvement of Austin Woods in transmitting the bomb threat, but rather

asserted that the School Board had no power to discipline Austin Woods because Austin Woods was no longer a student in the Winchester Public Schools system. Austin Woods' legal counsel declined to present any specific factual information and indicated to the School Board that there was nothing else which legal counsel wished the School Board to consider with respect to the disciplinary case. At the court hearing in this case, counsel for Woods asserted that an additional reason that no defense was presented in December was because of the pending criminal charges against Austin Woods. In any event, Michelle Woods and her legal counsel left the School Board meeting before a final decision had been made by the School Board. Mr. Taylor, Dr. Leonard, and Winchester Police Officer Smith further briefed the School Board regarding the situation, including the lack of cooperation of Michelle Woods and Austin Woods in the school's investigation. The School Board discussed the evidence and, following its deliberations, voted in open session to expel Austin Woods from any further attendance in the Winchester Public Schools. (Tab H, AR 15-16; Tab I, AR 23.)

Through the opportunities afforded by Dr. Leonard, Mr. Taylor, Dr. Burdick, and the School Board, Austin Woods had notice of the allegations against him and numerous opportunities to tell his side of the story, either in person or through his lawyer or mother. Austin Woods repeatedly declined to take advantage of the opportunities to explain his side of the story extended to him by school administrators, and he declined to present a defense in the School Board hearings.

On January 6, 1999, the criminal charges pending against Austin Woods arising from the bomb threat were resolved in the Winchester Juvenile and Domestic Relations District Court.

Following receipt of Austin Woods' Petition filed in this Court challenging the December 14 expulsion action of the School Board, Dr. Burdick notified Michelle Woods by letter dated January 14, 1999, that the School Board would reopen the expulsion hearing and provide a second opportunity for Austin Woods to have a hearing before the School Board. Dr. Burdick proposed that this additional hearing would be held on January 19, 1999. Dr. Burdick's January 14 letter stated:

The Winchester School Board and I believe that you and your son, Austin, have been offered ample opportunity to learn of and challenge any evidence regarding Austin's responsibility for a bomb threat that was e-mailed to Handley High School on November 4, 1998. We also believe that you had ample opportunity to offer evidence on his behalf

directly to the Winchester School Board prior to the School Board's decision to expel him, which occurred on December 14, 1998.

Enclosed please find a copy of a letter to you dated November 13, 1998, from Handley High School principal Dr. Ricky Leonard in which he communicates that you refused a request by him to meet with you and your son and that you offered no cooperation into the investigation of the matter. He also indicates in that letter that your son had been absent from school, making it impossible for him to speak to him at school regarding the bomb threat. Also enclosed is a letter to you from Mr. John Taylor, Director of Student and Parent Support Services, dated December 1. In that letter, which was a follow-up to a conference that Mr. Taylor and I had with you on November 17, 1998, Mr. Taylor indicates that you were not prepared to discuss the circumstances that you wished the School Board to take into consideration or details about your belief that others may have been involved in the threat, even though we gave you the opportunity to do so that day. At the conclusion of that conference, we agreed that you, Austin, and Mr. Taylor would next meet on November 25, 1998, to discuss all of the issues at hand and determine the next course of action. Again, you failed to take advantage of an opportunity which we offered you to discuss this matter fully in that you called on November 25 and, on the advice of your attorney, canceled that meeting.

(Tab J, AR 27-28.) Neither Dr. Burdick nor the School Board received any substantive response to this letter.

Austin Woods by counsel declined the School Board's invitation to appear at its meeting scheduled for January 19, 1999. The rejection of the School Board's offer is reflected in a January 19, 1999, letter from Austin Woods' legal counsel. (Tab K, AR 29.) An earlier telephone communication between school administrators and Austin Woods' legal counsel on January 19, 1999, is reflected in a Memorandum. (Tab L, AR 30-31.) In addition to offering a second School Board hearing scheduled for January 19, 1999, administrators even offered to reschedule the second hearing to February 1, 1999. Notice and confirmation were memorialized in Mr. Taylor's letter, dated January 21, 1999, to Austin Woods' legal counsel. (Tab N, AR 42.) A reminder notice of the February 1, 1999, meeting also is reflected in another letter, dated January 27, 1999, from Mr. Taylor to Austin Woods' legal counsel, with a copy provided to Michelle Woods. (Tab O, AR 43.)

On February 1, 1999, consistent with the prior notice contained in the letters from Mr. Taylor to legal counsel for Austin Woods, the School Board met in Executive Session, reopened the prior hearing, and conducted a new, second hearing for Austin Woods. Once again, Austin Woods did not appear, and neither Michelle Woods nor Austin Woods' legal counsel appeared for this hearing. The School Board received information from Mr. Taylor, Dr. Leonard, and Officer Smith, which clearly established the culpability of Austin Woods. The information presented to the School Board at the February 1 hearing is documented in a transcript. (Tab R, AR 56-76.) After the School Board deliberated, it voted in public session to affirm the expulsion of Austin Woods. The School Board's action is reflected in its meeting minutes. (Tab Q, AR 51-55.)

Since the School Board's second hearing and action affirming the expulsion of Austin Woods on February 1, 1999, no Petition has been filed by or on behalf of Austin Woods to seek judicial review of the School Board's February 1, 1999, action.

## II. *Conclusions of Law*

"Without first establishing discipline and maintaining order, teachers cannot begin to educate pupils." *New Jersey v. T.L.O.*, 469 U.S. 325, 350, 83 L.Ed.2d 720, 740 (1985) (Powell, J., concurring). In Virginia, pupils may be suspended or expelled from attendance at school for sufficient cause. Va. Code Ann. § 22.1-277 (emphasis added). Making a bomb threat is sufficient cause for expulsion.

The Petitioner challenges the December 14, 1999, expulsion decision of the School Board and invokes the Court's jurisdiction pursuant to the terms of Virginia Code § 22.1-87, which prescribes that:

> Any parent, custodian, or legal guardian of a pupil attending the public schools in a school division who is aggrieved by an action of the school board may, within thirty days after such action, petition the circuit court having jurisdiction in the school division to review the action of the school board. Such review shall proceed upon the petition, the minutes of the meeting at which the school board's action was taken, the orders, if any, of the school board, an attested copy of the transcript, if any, of any hearing before the school board, and any other evidence found relevant to the issues on appeal by the court. The action of the school board shall be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion

"The word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." *Virginia Beach Beautification Comm. v. Board of Zoning*, 231 Va. 415, 419-20, 344 S.E.2d 899 (1986) (citation omitted). In addition, the United States Supreme Court has held that "total exclusion from the educational process for more than a trivial period .... is a serious event in the life of a suspended child." *Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 737, 42 L. Ed. 2d 725 (1975). A suspension or expulsion is noted on a student's records and these records are often used by future employers or reviewed by colleges making admissions decisions. The Petitioners therefore have standing, and this matter is properly before this Court for review under Virginia Code § 22.1-87.

Judicial review under § 22.1-87 is limited in cases like this to whether the School Board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion in expelling Austin Woods. Va. Code Ann. § 22.1-87. Additionally, alleged violations of constitutional due process may be considered. The Court's judicial review generally proceeds on the administrative record. *See, e.g., Russell County School Board v. Anderson*, 238 Va. 372, 385 (1989) ("[t]he very essence of trial court review of a school board's conduct is that the trial court must decide whether, given the information placed before the school board, the school board's decision was justified"). The "action of the school board *shall* be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion." Va. Code Ann. § 22.1-87 (emphasis added).

A second procedural issue before the Court is whether the Winchester School Board exceeded its statutory authority in expelling Austin Woods after he had withdrawn from John Handley High School and enrolled in another school system. This issue is apparently one of first impression in Virginia.

The School Board did not exceed its authority or act unreasonably in taking disciplinary action against Austin Woods. Although Austin Woods asserts that he officially withdrew as a pupil following the bomb threat incident, the issue of his withdrawal is of no moment, because assuming that he did withdraw, the School Board had the prerogative to exercise its disciplinary authority pursuant to the terms of Virginia Code § 22.1-277 and proceed with its investigation and subsequent disciplinary procedure. Austin Woods was a "pupil" at the time of his misconduct. If a student could evade disciplinary consequences by withdrawing, any student who commits even the most egregious act as a pupil could frustrate or prevent the School Board from exercising its lawful power to discipline him and safeguard the school

environment by withdrawing after he became the suspect in a serious incident. It is the School Board who controls the disciplinary process not the accused student. Were this not the case, the misbehaving student could wander about the state committing infractions, withdrawing, and then entering another school system without there ever being an official record of his having been disciplined in the school systems upon whom he had practiced his mischief or crimes.

The School Board, in expelling Austin Woods, did not exceed its authority or violate the Woods' constitutional due process rights. In the seminal case of *Goss v. Lopez*, 419 U.S. 565, 42 L. Ed. 2d 725, the Supreme Court found that "students facing suspension and the consequent interference with a protected property right must be given some sort of notice and afforded some sort of hearing … ." *Goss* at 579. While the Court further recognized that "longer suspensions or expulsions may require more formal procedures …" *Goss* at 584, no court has prescribed a precise procedural paradigm that is required in expulsion cases to pass constitutional muster. A common thread in the school disciplinary decisions is the judicial recognition of the need for flexibility to address different circumstances and that, if notice of the offense is provided and upon denial the evidence is generally explained and some sort of hearing is offered to afford the accused student facing suspension or expulsion a reasonable opportunity to tell his side of the story, that is all the due process that is required. Another factor is the fact that pupils do not have the same rights as adults, so less due process is required than in cases dealing with adult rights. "[T]he nature of those [student] rights is what is appropriate for children in school." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 655-56 (1995).

> Due process, which may be said to mean fair procedure, is not a fixed or rigid concept, but, rather is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation [citation omitted]. The time-honored phrase 'due process of law' expresses the essential requirement of fundamental fairness. Yet, it 'does not impose an unattainable standard of accuracy' [citation omitted]. Hence, the procedures employed in a [school] disciplinary action must be tested by the extent to which they comport with the requirement of fundamental fairness.

*Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988). Fairness means that Austin Woods need only have been provided with "an

opportunity to answer, explain and defend, and not whether the hearing mirrored a common law criminal trial." *Id.* at 14. Indeed, the United States Supreme Court has cautioned that "further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process." *Gorman*, 837 F.2d 7, 14, quoting *Goss v. Lopez*, 419 U.S. 565, 583 (1975). Well-settled principles establish that:

> The question presented is not whether the hearing was ideal, or whether its procedure could have been better. In all cases the inquiry is whether, under the particular circumstances presented, the hearing was fair, and accorded the individual the essential elements of due process. In the words of Justice White, *"the Due Process Clause requires, not an elaborate hearing" before a neutral party, but simply "an informal give-and-take between student and disciplinarian" which gives the student "an opportunity to explain his version of the facts."*

*Gorman* at 16 (internal citation omitted) (emphasis added).

Virginia Code § 22.1-277 is the statutory response of the General Assembly to *Goss v. Lopez, supra,* and the statute does not require a full fact-finding hearing with the panoply of procedural rights attendant to such hearings, such as a right of confrontation and a right to counsel. In *Wood v. Henry County Public Schools,* 255 Va. 85, 91-92, 495 S.E.2d 255 (1998), the Supreme Court of Virginia reviewed the disciplinary process applied by the school board in expelling a student *vis a vis* the minimum Constitutional due process requirements as enunciated in *Goss v. Lopez,* and it stated:

> The United States Supreme Court articulated the principles that we must apply in this appeal in *Goss v. Lopez,* 419 U.S. 565, 574, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1974). There, the Court stated that a "State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."
>
> Thus, a student charged with misconduct may not be suspended from a public school without the minimum procedures required by the due process clause. Explaining the requirements of due process, the Supreme Court noted: " 'The fundamental requisite of due process of

law is the opportunity to be heard,' *Grannis v. Ordean*, 234 U.S. 385, 394, 58 L. Ed. 1363, 34 S. Ct. 779 (1914), a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to ... contest.' ... *At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.* 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified'." 419 U.S. at 579 (citation omitted) (emphasis added).

The Supreme Court also held in *Goss* that "students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that *the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.*" *Id.* at 581. (Emphasis added.)

Applying these principles, we hold that the Henry County Public School division did not abridge Brian's due process rights. The assistant principal, who initially suspended Brian, gave him an opportunity to explain his version of the facts, and Brian was informed of "what he is accused of doing and ... the basis of the accusation." *Id.* at 582.

The committee for the control of school discipline also afforded Brian due process. That committee forwarded a notice to Brian's parents that he committed a "severe breach of the conduct code at Bassett High School" and referred to a policy which states that a student shall not possess, handle, or transmit a knife while at school or during an off-site school-sponsored activity. Without question, Brian, his parents, and their attorney knew the reasons Brian had been suspended and that the committee was conducting a hearing to determine whether Brian should be expelled. Additionally, as we have already mentioned, Brian, his parents, and their attorney participated during the hearing before the committee.

The superintendent did not abridge Brian's due process rights. The Woods requested an appeal to the superintendent "due to a weapons violation." The Woods were informed of the date and time

for this appeal, and Brian, his parents, and their attorney were given an opportunity to make whatever statements they deemed appropriate.

Despite repeated opportunities and solicitations to tell his side of the story, neither Austin Woods nor anyone acting on his behalf ever refuted the accusation against him, and the evidence clearly implicated him as the perpetrator of the bomb threat. The Woods family retained counsel, and that counsel attended the school board disciplinary hearing. The extent to which counsel for Austin Woods elected to refrain from presenting rebuttal evidence to the school board was a tactical decision which counsel was entitled to make, but that failure to participate in the disciplinary process and present a defense when afforded the opportunity by the School Board cannot be used as a premise for impeaching the process.

The Petitioners concede that they had adequate notice of the charges and were afforded an opportunity to present the student's version of the incident. Petitioner's Conclusion of Law No. 9. However, they further argue that the process was constitutionally flawed because "the Petitioners were never provided with an explanation of the evidence against the student or an opportunity to confront and cross-examine the witnesses and evidence against him." Petitioners' Conclusion No. 9. At the hearing, the Petitioners further argued that they had a right to be present throughout the School Board Meeting, except for the deliberative process. The Petitioners were provided with notice, a reasonable explanation of the charge against the student, and a hearing in which to explain their side of the issue, and that is all the due process required in an expulsion case by either the U.S. Constitution or Virginia Code § 22.1-277. Moreover, "a court will not find an absence of procedural due process if the substantive evidence against the student was so overwhelming that the school officials would again impose the same penalty and a second hearing would accomplish no amelioration of the [alleged] prior deprivation." *Bystrom v. Fridley High School*, 686 F. Supp. 1387, 1394 (D. Minn. 1987). *Accord, Hillman*, 436 F. Supp. at 815.

The School Board is entitled to a presumption of honesty and integrity. *Withrow v. Larkin*, 421 U.S. 35 (1975). *Accord, Hladys v. Commonwealth*, 235 Va. 145, 147-48 (1988). Even if the School Board hearing on December 1, 1998, was flawed procedurally in any respect, the School Board afforded Austin Woods, as well as his mother and legal counsel, another opportunity for what amounted to a new, full-fledged hearing. From the Court's review of the notices and conduct of the hearing on February 1, 1999, it is clear that procedural due process was afforded and that the new hearing, to any degree necessary, operated to cure any alleged prior procedural irregularities. From

the "totality of circumstances," including all of the oral and written administrative communications and the School Board hearings, there could be no doubt that the School Board did not exceed its authority, act arbitrarily or capriciously, or violate the Petitioners' due process rights.

In *Spotsylvania School Board v. McConnell*, 215 Va. 603, 212 S.E.2d 264 (1975), the Virginia Supreme Court stated that "[t]he great weight of authority is to the effect that the decision of a school board will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of discretion, or there is no substantial evidence to sustain its action." *Id.* at 607 (citations omitted). Circuit courts in Virginia applying these principles have not substituted their judgment for that of the school board, but have reviewed whether the school board's decision was based on fact, law, and reason. *See Montgomery v. Fairfax County School Board*, 18 Va. Cir. 248 (1989); *Fishel v. Frederick County School Board*, 11 Va. Cir. 283 (1988).

To the extent that the Petitioner asserts or implies that the School Board acted arbitrarily or capriciously or abused its discretion with respect to the evidence on which it rested its decision, the Court concludes that the School Board acted properly. "Arbitrary" means "without reason" or "at random." A decision is arbitrary if it is without a rational basis. See, e.g., *School Board v. McConnell*, 215 Va. 603, 607 (1975). In determining whether the School Board's action here was arbitrary with respect to the factual foundation for its decision, the sole question for the Court is whether there existed a rational basis for the School Board's expulsion action. Without question, such a basis existed with respect to Austin Woods and his responsibility for the bomb threat to Handley High School. The trail of electronic evidence led not only to his home but to the "fingerprint" of the identical message on the hard drive of his computer. The term "capricious" means "unpredictable" or "inconstant." There exists no evidence in the administrative record that the School Board acted unpredictably in this situation; on the contrary, the School Board acted very reasonably on the evidence before it.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered:

1. The Winchester City School Board's decision in expelling Austin Woods is affirmed.

2. The Petition for Review is dismissed with prejudice.