# Richmond

R. J. Lillard, et al. v. Fairfax County Airport Authority.

June 12, 1967.

Record No. 6469.

Present, Eggleston, C.J., Spratley, Buchanan, Snead, I'Anson and Gordon, J.J.

*Randolph W. Church, Jr.* (*Hardee Chambliss*, on brief), for appellants.

*Robert C. Fitzgerald* (*H. Kendrick Sanders, Jr., Fitzgerald* and *Smith*, on brief), for appellee.

SPRATLEY, J., delivered the opinion of the court.

On December 31, 1965, the Fairfax County Airport Authority (Authority) applied to the State Corporation Commission (Commission) for a permit or license to establish, maintain, conduct and operate in Fairfax county an airport for the landing and departure of civil aircraft engaged in commercial aviation. Title 5, §§ 5-1 to 5-14, Code of Virginia 1950 (now Title 5.1, §§ 5.1-1 to 5.1-12, 1966 Repl. Vol.).

On January 7, 1966, the Commission entered an order which docketed the proceeding, and directed that the Director of the Division of Aeronautics investigate the said application and determine the location of the proposed airport with relation to its proximity to any other airport; the provisions made for the safety of aircraft alighting thereon and departing therefrom; whether the proposed airport be so situated as to endanger aircraft using the same or any other airport or landing field in close proximity thereto; and whether proper provisions had been made in all other respects according to law; and report to the Commission.

The Commission further ordered that Authority give notice of its application by publication in a newspaper of general circulation in Fairfax county, Virginia, notifying all persons objecting to the granting of such permit, or desiring to be heard with respect thereto, to advise the Director of the Division of Aeronautics and the Commission of their objections or desire to be heard.

On February 24, 1966, the Commission entered an order reciting receipt of objections to the application and requests to be heard with respect thereto, and set a hearing thereof to be held on April 6, 1966. Attested copies of the order were sent to Authority, to the Director of the Division of Aeronautics, and to all persons who had given notice of their desire to be heard.

On April 6, 1966, Authority and a number of persons objecting to the application (Intervenors) appeared for the scheduled hearing. Also present were other persons who had been subpoenaed to present

evidence. After a representative of Authority had presented its case, and introduced a number of exhibits in support, the Commission ruled that it had no authority to refuse to issue the permit, and that since issuing the permit was purely a ministerial act, the permit would be granted. Commissioner Dillon, presiding, said: "We are not going to hear the evidence because the appeal will be taken on the legal points and not on the merits of the case; so the permit is granted."

All exhibits thereupon were withdrawn from the evidence, and an order was entered granting the permit.

On motion of the Intervenors, appellants here, the order was later amended to set out in detail what happened on April 6th, and "to reflect more completely the decision made on" that date.

In the order of April 6, 1966, this is said:

"(T)he Commission found that the provisions of Chapter 642, Acts of the General Assembly of Virginia, 1964, deprive the Commission of jurisdiction to take any action other than ministerially to grant the permit, no evidence was received and the permit was granted."

R. J. Lillard and his fellow Intervenors noted an appeal as of right. On appeal, the Intervenors contend that the Commission erred as a matter of law in its ruling that §§ 4(c), 5 (g) and 15 of an Act of the General Assembly 1964 et seq., providing for the creation of the Fairfax County Airport Authority (Authority) and defining its duties and powers deprived it of jurisdiction to take any action other than ministerially to grant the permit.

[1-2] Section 5-8 of Title 5, Code of Virginia, 1950,[1] in effect at the time the application was made, provides as follows:

"It shall be unlawful for any person, city, county or department of government to operate or conduct any airport or landing field for the landing or departure of any civil aircraft engaged in commercial aviation until a permit therefor shall be issued by the Commission. Before issuing such permit the Commission shall investigate the location of such airport or landing field with relation to its proximity to any other airport or landing field and provisions made for the safety

(1) Title 5, §§ 5-1. to 5-14, inclusive, Code of 1950, was reenacted as Title 5.1, §§ 5.1-1 to 5.1-12 in 1966, 1966 Repl. Vol., Acts 1966, Chapter 576, approved April 5, 1966, and effective July 1, 1966. Section 5-8 of the Code of 1950 was amended to delete the words "city, county or department of government" immediately after the word "person" in the first sentence of the section. However, "person" is defined in § 5.1-1 (b) as meaning "any individual, corporation, government, political subdivision of the State, or governmental subdivision or agency, * * *."

of aircraft alighting thereon or departing therefrom, and if the proposed airport or landing field shall be so situated as to endanger aircraft using the same or any other airport or landing field in close proximity, or proper provisions have not been made in other respects for the safety of aircraft alighting thereon or departing therefrom, the permit shall not be granted. Any interested party aggrieved by the granting or refusal of any such permit shall have an appeal as of right to the Supreme Court of Appeals, which shall hear and determine the case in the same manner as appeals are heard from the action of the Commission on applications to operate motor busses for transportation of passengers or freight. (1930, p. 716; 1936, p. 1060; Michie Code, 1942, § 37751.)"

Fairfax County Airport Authority (Authority) is a political subdivision of the Commonwealth of Virginia, authorized to be created by Chapter 642, Acts of Assembly, 1964, (1964 Act)[2] to construct, maintain and operate an airport in the county of Fairfax under certain conditions. So far as material here, the Act provides that:

"The Authority is hereby authorized and empowered:

"§ 4 (c) to determine the location of the project, to determine, in its discretion and without reference to any other provisions of any State law, the design standards and the materials of construction, and to construct, maintain, repair and operate the project; * * *

* * * * * * * * * * * *

"§ 5 (g) No property shall be acquired by any method by the Authority without the prior approval of the governing body of the county after public hearing held thereon. * * *

* * * * * * * * * * * *

"§ 15 All other general or special laws inconsistent with any provision of this Act are hereby declared to be inapplicable to the provisions of this Act."

Counsel for Authority argues that the provisions of § 5-8 of the Code of 1950 are inconsistent with the provisions of §§ 4 (c) and 5 (g) of the 1964 Act, and that the two statutes cannot be harmonized or reconciled. He urges that since the 1964 Act gives Authority power to determine the location of the project, to determine the design standards and the materials of construction, and to con-

---

(2) Section 5 (g) of the 1964 Act was also amended in 1966, Acts 1966, Chapter 372, effective April 1, 1966, to read as follows:

"No property shall be acquired by any method by the Authority without the prior approval of *the location of the situs of such property* by the governing body of the town after public hearing held thereon."

struct, maintain, repair and operate the project, the only limitation upon its power is that no property shall be acquired by Authority without the prior approval of the board of supervisors of Fairfax county.

We are of opinion that the two statutes can be construed together and reconciled. They are part of the same general plan and aimed at the accomplishment of the same result.

Code, § 5-8 is a licensing statute, which provides that it shall be unlawful for any person, city, county or department of government to operate any airport without first obtaining a permit therefor from the Commission, and that before issuing such permit, the Commission shall investigate and determine certain safety conditions with regard to the operation of the airport, its location, its proximity to other airports, and whether in the proposed use thereof "proper provisions have not been made in other respects for the safety of aircraft alighting thereon or departing therefrom." In the event of unfavorable findings, the permit shall be refused. The reenactment and amendment of Title 5 in 1966 as Title 5.1 emphasizes the intention of the General Assembly to make the general law apply to the operation of airports by governmental subdivisions or agencies as well as to other persons therein defined.

The 1964 Fairfax County Act does not deal with the questions of safety enumerated in Code, § 5-8, now § 5.1-8.

The right of Authority "to determine the location of the project" and to "operate" it is not exempted from the provisions of the general laws of the State as is its right to determine "the design standards and the materials of construction." The right to determine the location of its proposed airport is expressly limited by § 5 (g) of the Act, which requires the approval of the governing body of the county before it can acquire the property.

[3-4] The General Assembly must have known of the 1964 Act, which was amended in 1966, Acts 1966, Chapter 372, effective April 1, 1966, when it reenacted and amended Code, § 5-8 as 5.1-8 at the same session, Acts 1966, Chapter 576, approved April 5, 1966. Had it intended to deprive the Commission of jurisdiction to determine when a permit to operate an airport should be granted or refused, it would have repealed Code, § 5-8, or expressly provided that the provisions of the 1964 Act should be exempt from its requirements. *Boulevard Bridge Corporation* v. *City of Richmond*, 203 Va. 212, 216, 123 S. E. 2d 636.

"It is a well established rule of construction that full force and effect must be given to each provision of statutory law. It must clearly appear that the statute is in conflict with a former statute and that the two are so inconsistent that both cannot prevail before the prior statute may be held to be repealed or inoperative. Apparent inconsistencies must be reconciled if reasonably possible." *City of Richmond* v. *County Board*, 199 Va. 679, 685, 101 S. E. 2d 641.

Section 15 of the 1964 Act, which provides that the Act shall prevail if a conflict exists between it and other provisions of law, does not change the rule that an attempt must be made to harmonize all provisions of law.

"Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected, homogeneous system, or a single and complete statutory arrangement." 50 Am. Jur., Statutes, § 349, pages 345 and 346.

"Because of the fact that the situation presents the same men acting on the same subject, and of the presumption that the acts were imbued with the same spirit and actuated by the same policy, the rule that statutes in pari materia should be construed together applies with particular force to statutes which are enacted at the same time, or about the same time. This rule is especially applicable if the two acts are passed or approved on the same day. The rule also applies to statutes passed at the same session of the legislature, although on different days. * * *." 50 Am. Jur., Statutes, § 351, pages 349 and 350.

" * * * (W)here two statutes are passed by the same session of the legislature, as was the case here, that fact furnishes strong evidence that they were intended to stand together." *South Norfolk* v. *Norfolk*, 190 Va. 591, 602, 58 S. E. 2d 32.

For the foregoing reasons, we are of opinion that the 1964 Act does not deprive the State Corporation Commission of the power and duty imposed on it by general law. If the Commission, under circumstances similar to those here, must grant any permit applied for, the provisions of the general law would be completely inoperative. The power of Authority to determine the location of the project is natural and logical; but it must be subject to the safeguards of the general law. Otherwise, it is conceivable that, in the advanced and advancing era of air travel, the State Corporation Commission could be required to issue a permit to operate an airport immediately

adjacent to an airport, or in an extensively developed area, with the result that confusion and peril to the general public would be greatly increased. We think Code, § 5-8 should be applied meaningfully, and so applied to be not in conflict with the 1964 Act. This was recognized when Authority made its application for a permit under Code, § 5-8 on a form furnished it by Commission. The suggested inconsistencies are more imaginary than real.

The order of the Commission is reversed and the case is remanded, with the direction that it proceed to hear and determine all matters properly in issue under § 5-8, Code of 1950, now § 5.1-8, 1966 Repl. Vol., with respect to the application here involved.

*Reversed and remanded.*