## CIRCUIT COURT OF FAIRFAX COUNTY

Mark A. McChrystal

v.

Fairfax County
Board of Supervisors

March 22, 2005

Case No. (Chancery) CH-2005-000014

BY JUDGE ARTHUR B. VIEREGG

The Fairfax-Falls Church Community Services Board ("CSB") issued a reprimand to its employee, petitioner Mark A. McChrystal, for work place discrimination. He subsequently requested information from the Fairfax County Board of Supervisors ("County") and other respondents related to that reprimand. The County did not provide the information sought by McChrystal. As a consequence, invoking the Virginia Freedom of Information Act, Va. Code § 2.2-3700 *et seq.* ("FOI Act"), and the Virginia Government Data Collection and Dissemination Act, Va. Code § 2.2-3800 *et seq.* ("Data Collection Act"),[1] McChrystal filed the captioned cause seeking the issuance of a writ of mandamus ordering the County to provide the requested

---

[1] The Data Collection Act was originally enacted as the Privacy Protection Act of 1976, Va. Code §§ 2.1-377 *et seq.* In 2001, it was re-codified in its present form as the Virginia Government Data Collection Act.

information. On February 1, 2005, the parties presented evidence after which the matter was taken under advisement. At the beginning of the hearing, by agreement, the parties argued the County's demurrer to McChrystal's petition. I overruled the demurrer. The argument and my ruling were transcribed by a court reporter. My decision follows.

## I. Background of the Case

Unidentified employees, members of "a protected class,"[2] filed a complaint with the Office of Equity Programs ("OEP") charging McChrystal with employment discrimination.

McChrystal contends that the County's evidence was insufficient to satisfy its burden of proving that the investigation of his workplace deportment giving rise to his reprimand constituted an employment discrimination investigation. However, I find to the contrary. Ms. Martha Villanigro-Santiago testified that the complaints giving rise to the reprimand were based in part on such complaints. See Tr. at 21. (References to "Tr." refer to the partial transcript attached to McChrystal's Supplemental Memorandum filed on February 22, 2005.)

The County's Office of Equity Program ("OEP") investigated the complaint. McChrystal subsequently received a letter of reprimand finding that he had contributed to a hostile work place environment. McChrystal thereafter requested the disclosure of the OEP report, investigatory notes, memos, e-mails, and the names of recipients of the report other than "those with regular access authority" pursuant to the FOI Act and the Data Collection Act. See, e.g., Pet. Ex. 7. The County did not furnish the information sought. McChrystal filed this suit for mandamus.

At trial, Martha Villanigro-Santiago, Deputy Director of OEP, testified that it is OEP policy for its staff to inform those making discrimination complaints that the information furnished in connection with the complaint would be treated confidentially and would not be divulged to persons outside the OEP. Tr. at 16. She conceded she did not have personal knowledge that those making complaints against McChrystal had been informed that their statements would be treated with such confidentiality. Tr. 29. She further

---

[2] *See*, Va. Code § 2.2-3900 *et seq.* ("Virginia Humans Rights Act enacted to safeguard all individuals in the Commonwealth of Virginia from unlawful discrimination on account of "race, color, religion, national origin, sex, pregnancy [*et al.*].").

testified that the McChrystal investigation ceased to be an active investigation after the reprimand was issued. Tr. 28.

## II. Rules of Statutory Construction

This case involves the interpretation of two Virginia statutes, the FOI Act and the Data Collection Act. It is therefore appropriate to summarize recognized rules of statutory interpretation and construction employed to ascertain the meaning of laws enacted by the General Assembly and other legislative bodies. *Anglin v. Joyner*, 181 Va. 660, 666, 26 S.E.2d 58 (1943).

Rules of statutory construction may only be applied in the event that the meaning of the statute is subject to ambiguity or is otherwise difficult to comprehend. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985), *citing Lincoln National Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136-37, 327 S.E.2d 98 (1982). Therefore, a court must first attempt to determine the plain meaning of a statute under consideration.

If rules of statutory construction are necessary to determine the legislature's intent in enacting a statute, a variety of such rules may be employed. The legislature's intent may be determined by reference to the reasons on account of which the legislature enacted the statute, and the statute should be construed to achieve that end. *VEPCO v. Board of County Supervisors*, 226 Va. 382, 387-88, 309 S.E.2d 308 (1983); *Ambrogi v. Koontz*, 224 Va. 381, 386-87, 297 S.E.2d 660 (1982). In considering a statute, the purpose of the statute as a whole should be considered to determine the meaning of its constituent provisions. *VEPCO v. Citizens for Safe Power*, 222 Va. 866, 869, 284 S.E.2d 613 (1981). Thus, a court seeking to ascertain the meaning of a statute should first attempt to determine the legislature's intent from other provisions of the act itself and in light of other statutes dealing with the same subject. *Robert Bunts Engineering & Equipment Co. v. Palmer*, 169 Va. 206, 209-10, 192 S.E. 789 (1937); *Harris v. Commonwealth*, 142 Va. 620, 625, 128 S.E. 578 (1925). Statutes that deal with the same or connected subjects may be considered in *pari materia* and should be read and construed together so as to harmonize and give effect to all the provisions of each. *Lillard v. Fairfax County Airport Auth.*, 208 Va. 8, 13, 155 S.E.2d 338 (1962). *See also, ACB Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d 334 (1988). In accordance with the rule of *expressio unius est exclusio alterius*, if the legislature excepts a certain class that would otherwise fall within the terms of a statute, it is necessarily inferable that the legislature did not intend to except other classes. *Reese v. Wampler Foods*, 222 Va. 249, 252, 278 S.E.2d 870 (1981). Finally, if statutory conflicts cannot be resolved, the

more specific statute will be deemed controlling. A specific statute may not be nullified by a statute of general application unless the legislative intent is plain. *Commonwealth ex rel. Virginia Dep't of Corrections v. Brown*, 259 Va. 697, 706, 529 S.E.2d 96, *citing Ingram v. Commonwealth*, 1 Va. App. 335, 341, 338 S.E.2d 657 (1986).

### III. The FOI Act

### A. Va. Code §§ 2.2-3705.1(1) and 2.2-3705.3(3)

The FOI Act broadly affords citizens a right of access to government information. Va. Code § 2.2-3700(B). It declares (i) that all "public records . . . shall be presumed open, unless an exemption is properly invoked;" (ii) that its provisions are to be liberally construed to effectuate its purposes; (iii) that its statutory exclusions exempting certain records from disclosure are to be narrowly construed; and (iv) that no public record shall be withheld unless specifically made exempt. *Id.*

Any citizen may make a request to inspect and copy public documents. Va. Code § 2.2-3704(A). Such documents must be provided unless an agency's obligation to disclose them is vitiated either by FOI Act provisions or by other laws. *Id.* Failure by the government to respond to a request for disclosure of documents is deemed a denial of that request. Va. Code § 2.2-3704(E).

Documents specifically excluded from disclosure are contained in §§ 2.2-3705.1 through 2.2-3705.7. Two of these exclusions, §§ 2.2-3705.1(1) and 2.2-3705.3(3), will become the focus of McChrystal's FOI Act requests considered in Part III of this letter opinion.

Section 2.2-3705.1(1) provides in pertinent part:

§ 2.2-3705.1. *Exclusions to application of chapter; exclusions of general application to public bodies.* – The following records are excluded from the provisions of this chapter but may be disclosed by the custodian in his discretion, except where such disclosure is prohibited by law:

1. Personnel records containing information concerning identifiable individuals, *except that access shall not be denied to the person who is the subject thereof. . . .*

(Emphasis added; the underlined clause is hereafter referred to as the "Employee Entitlement Clause.")

The County contends that Va. Code § 2.2-3705.3(3) exempts the documents requested by McChrystal from disclosure. Section 2.2-3705.3(3) provides:

> § 2.2-3705.3. *Exclusions to application of chapter; records relating to administrative investigations.* – The following records are excluded from the provisions of this chapter but may be disclosed by the custodian in his discretion, except where such disclosure is prohibited by law. . . .
>
> 3. Investigative notes and other correspondence and information furnished in confidence with respect to an active investigation of individual employment discrimination complaints made to the Department of Human Resource Management or to such personnel of any local public body. . . . However, nothing in this section shall prohibit the disclosure of information taken from inactive reports in a form that does not reveal the identity of the charging parties, persons supplying the information, or other individuals involved in the investigation.

As the foregoing summary of relevant FOI Act provisions makes plain, the Act generally affords broad citizen access to government documents, and the 2.2-3705.1(1) Employee Entitlement Clause expressly affords government employees (but not others) access to their personnel records. However, § 2.2-3705.3(3) expressly limits FOI Act access to documents related to an employment discrimination investigation.

The County's denial of McChrystal's FOI Act request frames two general inquiries necessary to decide the FOI Act issues in this case. They are:

(1) Did the County sustain its burden at trial to prove all facts necessary to demonstrate the applicability of the § 2.2-3705.3(3) exclusion, which precludes FOI Act access to certain information related to an employment discrimination investigation?

(2) To what extent does § 2.2-3705.3(3) preclude an employee from gaining access to employment discrimination investigation documents related to his own alleged misconduct?

The next section of this opinion letter will address these questions.

## B. Decision: McChrystal's FOI Act Claim

### 1. Whether the County Proved Sufficient Facts to Demonstrate the Applicability of the FOI Act's Section 2.2-3705.3(3) Exclusion?

Section § 2.2-3705.3(3) proves that "information, *furnished in confidence* with respect to an active investigation of individual employment discrimination complaints" (emphasis added) is exempt from mandatory FOI Act disclosure. McChrystal maintains that the County therefore had the burden of proving that information withheld by the County in fact had been "furnished in confidence."[3] The parties cited no Virginia cases addressing this

---

[3] The County's argument on this threshold burden of proof issue resembles the "catch-22" suffused Joseph Heller's novel about airmen fighting both World War II and military regulations. The following dialogue between flight surgeon, Dr. Daneeka, and airman, Yossarian, who desperately seeks to learn what it takes to escape European combat and return to the States, exemplifies the theme.

[Yossarian]: "Is [Airman] Orr crazy?"
[Dr. Daneeka]: He sure is. . . ."
[Yosarrian]: "Can you ground him?"
[Dr. Daneeka]: "I sure can. But he has to ask me to. That is part of the rule."
[Yossarian]: "Then why doesn't he ask you to?"
[Dr. Daneeka]: "Because he's crazy. . . ."
[Yossarian]: That's all he has to do to be grounded?"
[Dr. Daneeka]: "That's all. Let him ask me."
[Yossarian]: "And then you could ground him?"
[Dr. Daneeka]: "No, then I can't ground him."
[Yossarian]: "You mean there's a catch?"
[Dr. Daneeka]: "Sure there's a catch. . . . Catch-22. Anyone who wants to get out of combat duty isn't really crazy."
Joseph Heller, *Catch 22*, pp. 45-46 (2004).
Similarly, the County's *Fleming* argument employs such "a catch." Section 2.2-3705.3(3) only exempts from FOI Act disclosure information furnished in confidence in the course of an employment discrimination investigation. OEP's policy is to assure all involved in such an investigation that information provided will be treated confidentially. Since it is OEP policy that such assurances be given, it is presumed that such assurances were afforded. It is therefore incumbent upon one accused giving rise to such an investigation to overcome the presumption with evidence. But then the catch. The subject of the investigation cannot attain the names of those involved in the investigation to rebut the presumption, because such information is confidential.

burden dealing with FOI Act exclusions. However, the Supreme Court of Virginia has held more generally that a party relying upon a statutory exemption bears the burden of proving facts necessary for assertion of that exemption. *Virginia Employment Commission v. A.I.M. Corp.*, 225 Va. 338, 346, 302 S.E.2d 534 (1983).[4] The County therefore bore the burden of proving that information it sought to withhold from disclosure had been *"furnished in confidence."*

The critical issue then becomes whether Ms. Villanigro-Santiago's testimony that OEP *policy* required investigators to afford such assurances of confidentiality to those furnishing information in an employment discrimination investigation was sufficient to sustain the County's burden to prove that such assurances were in fact given. In this regard, the County relies on *Fleming v. Commonwealth*, 191 Va. 288, 293, 61 S.E.2d 1 (1950). In *Fleming*, the Supreme Court of Virginia upheld a State Corporation Commission decision approving the Clinchfield Railroad Company's curtailment of rail service in Western Virginia on account of decreased rail demand. The appellants contended the decreased rail traffic instead was due to poorly maintained rail facilities rather than decreased demand. Citing a general statutory mandate that the Commission was to conduct inspections and keep itself informed as to the physical condition of Virginia railroads, the appellants contended the Commission must not have considered the poor condition of the rail facilities as the reason for the decreased rail traffic. The Court rejected the appellants' argument, making plain that there was ample evidence in the record supporting the Commission's determination of decreased demand; and it emphasized that the appellants had offered no evidence that the Commission had failed to inspect the railroad. Under such circumstances, the Court declared that it would not presume the Commission had failed to meet its statutory duties under the law. *Fleming* thus involved a litigant's failed attempt, without evidence, to sustain *its burden* to prove the failure of a government agency to perform its statutory duties.

The County's reliance on *Fleming* is misplaced. First, *Fleming* does not, as here, deal with a government agency's burden to prove a necessary element for the application of a statutory exemption. Second, the State Corporation Commission's general statutory duty in *Fleming* is not analogous to an agency's self-promulgated operating policy. Were such an argument to be adopted, any government agency might prove that it did what the law requires,

---

[4] In *Virginia Employment Commission*, the statute as to which the exemption was claimed, as here, was entitled to a liberal construction. *Id.*

because it was the policy of the government agency that its employees do what the law requires be done. Such Panglossian logic, if embraced, would reduce the government's burden of proof to mere proof of a policy without proof of compliance with that policy. It would virtually emasculate Constitutional safeguards in the criminal law area. *Miranda* warnings might be proved by testimony of police that it was the policy to give such warnings to suspected criminals when interrogated in custody.[5] The County's *Fleming* argument is rejected.

The County also relied on *Benson v. Norfolk*, 163 Va. 1037, 1040-41, 177 S.E. 222 (1934) (upholding a city ordinance as constitutional declaring the presumption that police officers exercise their discretion and authority in a fair and reasonable way). A review of the facts of *Benson* reveals it to be facially inapplicable to the issues here.

The parties have presented no Virginia law with respect to the evidence necessary for a government to meet its burden of proving that information was furnished in confidence for purposes of FOI Act exclusions protecting such confidentially furnished information. However, in *Nemetz v. Department of the Treasury*, 446 F. Supp. 102 (N.D. Ill. 1978) (construing the federal Privacy Act confidentiality exemption, 5 U.S.C. § 552a(k)(5)), the district court held that a government agency relying on such an exemption must prove more than "general allegations" of confidentiality. 446 F. Supp at 105. The court further declared: "Evidence must be presented based on personal knowledge that an express or implied promise of confidentiality was given to each source sought to be exempted under the provision." *Id*. The County argues that *Nemetz* is distinguishable because it deals with the federal Privacy Act and not the federal Freedom of Information Act. Both of those acts, just as the Virginia Acts considered in this opinion, relate to the same subject: disclosure of government information. I conclude *Nemetz* is persuasive. Because the County made only "general allegations" of its policy with respect to afford such assurances of confidentiality and because it failed to elicit

---

[5] *Miranda* conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights; failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. Conversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver. *Mississippi v. Seibert*, 159 L. Ed. 2d 643, 124 S. Ct. 2601, 2608 (2004).

testimony from investigators that such assurances were in fact afforded persons furnishing information in the McChrystal employment discrimination investigation, it failed to prove that the information sought by McChrystal is exempt from disclosure by § 2.2-3705.3(3).

The foregoing decision, however, is based only on persuasive federal authority. Because this issue is one of first impression in Virginia, McChrystal's petition for FOI Act relief – based on the assumption that the requirements for application of § 2.2-3705.3(3) have been met – merits examination. Two assumptions are made in this regard. Pursuant to the first, it is assumed that § 2.2-3705.3(3) applies *without consideration* of the Employee Entitlement Clause contained in § 2.2-3705.1(1), which affords agency employees access to their personnel record. Pursuant to the second, the applicability of the § 2.2-3705.3(3) exclusion will be construed in light of § 2.2-3705.1(1)'s Employee Entitlement Clause.

### 2. Interpretation of § 2.2-3705.3(3)

#### a. Without Reference to the Employee Entitlement Clause of § 2.2-3705.1(1)

If the meaning of § 2.2-3705.3(3) is considered without reference to § 2.2-3705.1(1)'s Employee Entitlement Clause, its meaning is clear and unambiguous. Therefore resort to rules of statutory construction is generally unnecessary. *See Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985) (stating "if language is clear and unambiguous, there is no need for construction by the court").

The OEP investigatory materials sought by McChrystal were gathered in the course of an active employment discrimination investigation. As such, by the plain meaning of the first sentence of § 2.2-3705.3(3), they are excluded from the FOI Act's disclosure mandate. Although § 2.2-3705.3(3) describes the exempted materials as ones "furnished in confidence with respect to *an active investigation*" (emphasis added), the reference to an active investigation merely purports to describe how the excluded material was gathered, not the period of time during which it would (if at all) be exempt from disclosure. Therefore, the first sentence of this exclusion declares that, if investigative notes and information gathered in confidence were obtained in the course of an active employment discrimination investigation, they are permanently

exempt from FOI Act disclosure.[6] Therefore, if McChrystal is entitled to any of the investigation materials, his entitlement to such information must arise because the second sentence of § 2.2-3705.3(3) enervates the absolute proscriptive meaning of the first. It might be possible that access would be afforded by other laws. For purposes of this section, only consideration of the meaning of the FOI Act is involved.

The second sentence of § 2.2-3705.3(3), however, does not purport to modify the first sentence's permanent exemption of investigatory notes and information from mandated FOI Act disclosure. Instead, it simply explains that the first sentence's exemption does not preclude a FOI Act petitioner from access to information contained in (i.e., "taken from") "inactive reports."[7] Moreover, the second sentence also emphasizes that a petitioner is only entitled to information in a final report to the extent the information disclosed "does not reveal the identity of the complainants, persons supplying information, or others involved in the investigation."

If McChrystal's petition invoking FOI Act relief is considered without reference to § 2.2-3705.1(1), McChrystal would only be entitled to information in the OEP final report,[8] and then only to so much information in

---

[6] This does beg the question under what circumstances such materials might be gained in a way other than in the course of an active investigation. That issue, however, is not implicated by the issues before the court.

[7] The reference in the second sentence of § 2.2-3705.3(3) to information in "an inactive report" is curious. Reports, as repositories of information gained in an investigation, *see, Webster's New College Dictionary* (2d ed. 1980), at 1206 (investigation defined, *inter alia* as "a formal or official presentation of facts . . . or of the record of an investigation"), are necessarily passive. Hence the reference in the second sentence to an "inactive report" would seem to refer to a record of an inactive investigation. This is so because the definition of the term "report" presupposes the *record* of either an active or inactive investigation. *See, Webster's New World Dictionary, Second Edition*, 1206 (report defined as "5. to give a formal statement or official account of; to announce formally (the results of an investigation))." In the absence of any persuasive explanation to the contrary, I conclude that the statutory term "inactive report" refers to a report prepared after an investigation has become inactive, i.e., an investigation that has been either concluded or has been suspended. For purposes of this case, it would seem the OEP investigation had been completed. Therefore any report would be a final report.

[8] But therefore would not be entitled to "investigator notes, and other correspondence and information, furnished in confidence with respect to an active investigation of

the final report that would not reveal the identities of (1) those involved in making the charges giving rise to the report; (2) those who provided information used in the report; and (3) others involved in the investigation, including the investigators.

### b. If the Employee Entitlement Clause of § 2.2-3705.1(1) is Considered

The language of § 2.2-3705.1(1) makes plain that all "personnel *records*" (emphasis added) are generally exempt from mandatory FOI Act disclosure. Virginia public policy thus protects agency employee records from broad FOI Act disclosure. However, since a literal application of this exclusion would disenable a government employee from gaining access to his or her own personnel records, the General Assembly added the Employee Entitlement Clause ("except that access [to personnel records] shall not be denied to the person who is the subject thereof") to the language of § 2.2-3705.1(1). Therefore, but for the language of § 2.2-3705.3(3), to the extent an employee is the subject of an employment discrimination investigation that produces information *that become a part of an employee's personnel record*, the plain language of the Employee Entitlement Clause affords an employee access to that information.

However, since the Employee Entitlement Clause only affords a government employee a right to a personnel record, it is first necessary to determine (1) what the term "personnel record" means, as it is used in § 2.2-3705.1(1) and (2) whether or not employment discrimination investigation information exempted by § 2.2-3705.3(3) might compose part of a personnel record. If not, no further consideration of the Employee Entitlement Clause with respect to McChrystal's FOI Act requests is necessary.

The FOI Act does not define the term, personnel record.[9] Nor has a statutory definition been found in the Code of Virginia. The definition of personnel record, however, may be gleaned from the accepted dictionary

individual employment discrimination complaints made to the Department of Human Resource Management or to such personnel of any local public body."

[9] Neither McChrystal nor the County addressed the meaning or significance of § 2.2-3705.1(1)'s Employee Entitlement Clause. Therefore they have not advanced arguments as to the meaning of "personnel records" as those words are used in the Employee Entitlement Clause.

definition of the two statutory words under consideration: "personnel" and "record." The term "personnel" refers to persons who are employed in a work, enterprise, service, [etc.]." *See, Webster's New World Dictionary, Second Edition, supra,* at 1062. The term "record" has numerous meanings, but all relate to creating and registering information in a permanent form. *Id.* at 1187. Based on these dictionary definitions, I conclude that all information gathered about an employee's employment in a permanent form constitutes a personnel record. Such a conclusion is consistent with *dicta* in *Moore v. Maroney,* 258 Va. 21, 516 S.E.2d 9 (1999), in which Justice Compton observed that an internal investigation of an employee's conduct is "consistent with our view that, under certain circumstances, investigative materials dealing with employee misconduct may indeed be a 'standard' part of employee personnel records." 258 Va. at 26.

The parties presented only abbreviated evidence at trial.[10] The evidence presented did not explicitly demonstrate when, if ever, reports in an employment discrimination investigation became part of an employee's employment record. It is necessarily inferable, however, in the absence of evidence to the contrary, that such a report (or information from that report) giving rise to disciplinary action against an employee would constitute part of that employee's personnel *record.* In other words, the report inferably would be considered in connection with future personnel decisions related to the employee. It would be a permanent source of information to be utilized in connection with such decisions. Therefore, the express language of the Employee Entitlement Clause mandates that an employee is entitled to access to such a report. This conclusion, moreover, is consistent with the over-arching purposes of the FOI Act that prefers disclosure over non-disclosure, and it is consistent with the express statutory mandate that exemptions, such as § 2.2-3705.3(3), are to be narrowly construed. McChrystal is accordingly entitled access to the full, un-redacted final report upon which his reprimand was based.

---

[10] In connection with this issue of the interrelationship between § 2.2-3705.3(3) and § 2.2-3705.1(1)'s Employee Entitlement Clause, as between the parties, the burden falls on McChrystal to prove that some of the investigation records constituted personnel records. However, since the reprimand was one cited for employment discriminatory misconduct, it is inferable, unless shown to the contrary, that the records constituted personnel records. Under such circumstances, the burden thus falls on the County to prove the reverse.

McChrystal, however, additionally seeks access to OEP's investigation notes, memos, e-mails, and other information (sometimes referred to collectively as "investigation materials"). While these materials certainly relate to McChrystal's employment, the evidence presented at trial does not establish that they are maintained as part of his employment record. In other words, McChrystal's evidence, either alone or considered in conjunction with the County's evidence, does not demonstrate materials are maintained as part of McChrystal's permanent record. This too is a burden of proof issue. While the facts are sufficient to conclude a final report would become part of an investigated employee's record, they are not sufficient to classify investigating materials as such.

### 3. Conclusion

Because the County failed to prove a necessary element to invoke § 2.2-3705.3(3), advice to sources of information that information gathered would be treated confidentially, McChrystal is entitled to all of the information sought pursuant to the FOI Act. Even had such an element been proven, however, for the reasons discussed above, McChrystal would be entitled to all information in the final OEP report but not the investigatory materials giving rise to it. Since the two statutes can be reconciled with respect to the information sought by McChrystal, rules of statutory construction relating to one statute nullifying another are unnecessary. *E.g. Commonwealth ex rel. Virginia Dep't of Corrections v. Brown,* 259 Va. 685, 696, 529 S.E.2d 318, *citing Ingram v. Commonwealth,* 1 Va. App. 335, 341, 338 S.E.2d 657 (1986).

### IV. The Data Collection Act

### A. The Statute and Decisional Authority

In enacting the Data Collection Act, the General Assembly recognized that the government's collection, maintenance, and dissemination of information about citizens is potentially extensive; that the handling of such information may cause harm to citizens; and therefore that laws are necessary "to govern information systems containing records on individuals." Va. Code § 2.2-3800(B)(1)-(4).

By enacting that Act, the General Assembly, *inter alia,* expressly indicated its intent to ensure that agencies of the Commonwealth not maintain secret personal information systems; that personal information collected only

be utilized if accurate and current; that citizens be empowered to learn the purpose and the particulars of how personal information is collected by state government agencies about them; and that an uncomplicated procedure be mandated for citizens to correct, erase, or amend inaccurate, obsolete, or irrelevant information about themselves. Va. Code § 2.2-3800(C)(1), (6), and (7).

The Data Collection Act, § 2.2-3801, contains the following defined terms used in the Act:

> 1. "Information system" means the total components and operations of a record-keeping process, including information collected or managed by means of computer networks and the global information system know as the Internet, whether automated or manual, containing personal information and the name, personal number, or other identifying particulars of a data subject.

> 2. "Personal information" means all information that describes, locates or indexes anything about an individual including his . . . employment record, or that affords a basis for inferring personal characteristics, such as . . . things done by or to such individual. . . . *"Personal information" shall not include routine information maintained for the purpose of internal office administration whose use could not be such as to affect adversely any data subject. . . .*

> 3. "Data subject" means an individual about whom personal information is indexed or may be located under his name, personal number, or other identifiable particulars in an information system.

(Italics added and referred to as "Personal Information Exclusion".)

Section 2.2-3803 of the Data Collection Act affords a citizen, about whom the Commonwealth or its agencies has collected information, the right to gain access to and inspect of the following:

> 1. All *personal information about the data subject;*
> 2. The nature of the source of the personal information;
> 3. Recipients of the information "other than those with regular access authority.

(Emphasis added.) Although the Data Collection Act incorporates certain provisions of the FOI Act that exclude certain categories of information from

Data Collection Act disclosure, none of these FOI Act exclusions pertain to personal information, as here, gathered in an employment discrimination investigation. *See*, Va. Code § 2.2-3806(A)(3)(a) (requiring a government agency to disclose all information except that exempted by §§ 2.2-3705.1(1), 2.2-3705.4(1), and 2.2-3705.5(1)). Accordingly, pursuant to the rule of statutory exclusion, *expressio unius est exclusio alterius*, the FOI Act's exclusion of information gathered in the course of an employment discrimination investigation is inapplicable to the information to which a data subject may gain access pursuant to the Data Collection Act. *Reese v Wampler Foods*, 222 Va. at 252.

The Supreme Court of Virginia has only decided one case expansively construing the scope of the Data Collection Act. *Hinderliter v. Humphries*, 224 Va. 439, 297 S.E.2d 684 (1982).[11] The *Hinderliter* facts may be summarized as follows. Hinderliter, a Prince William County police officer, arrested the daughter of a member of the Prince William County Board of Supervisors. An internal police investigation ensued. A report at the end of the investigation exonerated Hinderliter. It was placed in Hinderliter's personnel file. Later, the Prince William County Executive furnished the report to the board member whose daughter Hinderliter had arrested. The report was acquired by the supervisor's daughter. Her attorney tried to introduce the report in the daughter's criminal trial. Hinderliter filed suit to enjoin the further dissemination of the report. His prayer for injunctive relief was denied by the trial court. On appeal, the Supreme Court of Virginia reversed, holding *inter alia*, that the internal investigation report, having been placed in Hinderliter's personnel file, was subject to the express provisions of the Act.[12] *Id.* at 447. However, the court denied Hinderliter's prayer for injunctive relief, holding that a writ of mandamus was his proper remedy. *Id.* at 450.

---

[11] The court is aware of an additional case involving the scope of the Date Collection Act, but finds its limited facts inapplicable here. *See*, *Carraway v. Hill*, 265 Va. 20, 574 S.E.2d 274 (2003) (holding that a city treasurer is a constitutional officer, and therefore the Privacy Protection Act does not apply).

[12] The *Hinderliter* case involved the Privacy Protection Act of 1976.

*B. Decision*

The Data Collection Act plainly mandates an agency, upon request, to disclose non-exempt records containing personal information about a citizen, if those records contain that citizen's name and information about him. The Data Collection Act requires an agency to furnish a data subject:

> all information that describes, locates, or indexes *anything about an individual* including his . . . employment record or that affords a basis for inferring . . . things done by or to such individual. . . .

Va. Code § 2.2-3801(2) (emphasis added).

Therefore, the plain mandate of the General Assembly is that Virginia agencies provide a data subject either personal information in his employment record or non-routine information about "things done" by the data subject.

The Personal Information Exclusion, quoted above, however, specifically dictates that certain routine information shall not constitute "personal information" for purposes of the Act. It declares: "'Personal Information' shall not include routine information maintained for the purpose of internal office administration whose use could not be such as to affect adversely any data subject. . . ." Plainly, however, information related to an investigation based on a charge of employment discrimination is not "routine," and it is calculated to adversely affect the person charged in the future, for instance in the event of a later charge of employment discrimination.

Since the report and investigatory materials, which are the subject of this case, relate to McChrystal's employment record, they are analogous to the internal investigatory report in *Hinderliter*. Furthermore, since the OEP report plainly involves an employment discrimination complaint about things done by him and adversely reflects upon McChrystal, it follows that the Data Collection Act requires disclosure by the County to McChrystal of this personal information.

*V. Disparate Relief Available Pursuant to the Two Acts;*
*Reconciling Inconsistent Outcomes*

Pursuant to the foregoing analysis, the Data Collection Act requires that the County afford McChrystal access to more government information than

that to which he is entitled pursuant to the FOI Act.[13] Thus, the Data Collection Act affords McChrystal access to information gathered in the course of the investigation of the employment discrimination complaint brought against him and his resultant reprimand. He is thus entitled to learn the identity of complainants, informants, and others involved in the investigation or mentioned in the report. The FOI Act, however, does not require that the County furnish him access to such investigation materials.[14] The two Acts therefore afford disclosure of differing amounts of information. This apparent disparity in outcomes deserves specific attention.

These Acts both deal with rights of citizens to government information. In some cases, as here, both Acts may mandate government agencies, upon request, to produce all or, as here, some of the same information maintained by the government. As observed in Part II, statutes dealing with the same or related subjects may be considered to be *in pari materia*; and courts must read them together to harmonize and give effect to their provisions. *Lillard v. Fairfax County Airport Auth.*, 208 Va. 8, 13, 155 S.E.2d 338 (1962); *see also, ABC Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d 334 (1988). If statutory conflicts cannot be reconciled, the more specific statute will be deemed controlling. *Commonwealth ex rel. Virginia Dep't of Corrections v. Brown*, 259 Va. 697, 706, 529 S.E.2d 96 (2000), 237 Va. 389, 393, 377 S.E.2d 422 (1988); *in accord, Penton v. City of Norfolk*, 16 Va. App. 141, 144, 428 S.E.2d 309 (1993). A specific statute cannot be controlled or nullified by a statute of general application unless the legislature clearly intended such a result. *Commonwealth ex rel. Virginia Dep't of Corrections v. Brown*, 259 Va. at 706.

The divergent results here, however, can be reconciled. They are a product of the differing albeit related public policies. The FOI Act affords broad access to government information to *all* citizens. Thus, § 2.2-3704 provides: "except as otherwise specifically provided by law, all public records shall be open to inspection and copying *by any citizens of the*

---

[13] For purposes of this Section, it is assumed that the County proved the applicability of § 2.2-3705.3(3).

[14] As noted earlier, a reading of § 2.2-3705.3(3) without reference to § 2.2-3705.1(1) would not require the County to furnish McChrystal with information in the final report that would divulge the identities of complainants, informants, and those otherwise involved. However, as discussed, the two sections can and must be construed together.

*Commonwealth.*" (Emphasis added.) Given this wide scope of citizen access to government records, in passing the FOI Act, the General Assembly also enacted numerous exceptions that protected certain classes of information from disclosure to all but certain specified citizens. Therefore, as discussed *infra*, § 2.2-3705.3(3), read together with § 2.2-3705.1(1), specifically limits citizen access to confidential employment discrimination investigation documents and only allows disclosure of the final investigation report to the employee who was the subject of the investigation. Since McChrystal sought relief pursuant to the FOI Act, he is therefore subject to the Act's exclusions protecting investigating materials from such expansive public view.

The Data Collection Act, however, unlike the FOI Act, affords access to more expansive government information to a narrower group of citizens, "data subjects," i.e., citizens about whom the government has gathered and maintained information. *See*, § 2.2-3801(3), *supra* (defining "data subject"). Section § 2.2-3806 of the Act enumerates the rights of data subjects to access of information with certain exceptions:

> § 2.2-3806. *Rights of data subjects.* – A. Any agency maintaining personal information shall. . . .
>
> 3. Upon request and proper identification of any data subject, or of his authorized agent, grant the data subject or agent the right to inspect, in a form comprehensible to him:
>
> a. All personal information about the data subject, *except as provided subdivision 1 of § 2.2-3705.1, subdivision 1 of § 2.2-3705.4, and subdivision 1 of § 2.2-3705.5.*

(Emphasis added.)

The General Assembly thus affords data subjects access to information about themselves. And by express incorporation of FOI Act §§ 2.2-3705.1, 2.2-3705.4, and 2.2-3705.5 into the provisions of the Data Collection Act, the General Assembly plainly demonstrated its intention that other information exempted by the FOI Act but not incorporated into the Data Collection Act, would not be exempt from Data Collection Act disclosure. Since the FOI Act's § 2.2-3705.3(3) exclusion limiting employment discrimination investigatory information from disclosure was not incorporated into the Data Collection Act, such investigatory information must be disclosed if it otherwise constitutes personal information about a data subject. *See, Reese v*

*Wampler Foods, supra* (applying the *expressio unius est exclusio alterius* rule of statutory construction).

I conclude that the foregoing analysis harmonizes the related but differing public policies embodied in the two acts under consideration. McChrystal therefore enjoys a right of access to information related to the investigation of him leading to the reprimand for workplace discrimination, just as Officer Hinderliter was entitled to access to the internal police investigation report placed in his personnel file. *Hinderliter, supra.* For the reasons stated, I therefore find that the information sought by McChrystal must be provided to him pursuant to the Data Collection Act despite the fact that the identity of complainants, informants, and others involved will be disclosed to him.

## *VI. Certain Arguments Advanced by the County*

The County has advanced additional arguments not addressed above, which merit specific attention.

The County argues that, in addressing the interplay between the FOI Act and the Data Collection Act, the Data Collection Act is a law of more general application than the FOI Act, and, accordingly, to the extent the two laws are in conflict, the provisions of the FOI Act must be accorded primacy. *Commonwealth ex rel. Virginia Dep't of Corrections v. Brown*, 259 Va. at 706. This argument is unpersuasive for the following reasons. First, the Data Collection Act does not have wider application than the FOI Act. The reverse is the case. While the Data Collection Act affords data subjects access to greater information about themselves than the FOI Act, the latter affords a right of citizen access to a broader range of government documents, not merely to those involving the data subjects themselves. Second, the FOI Act affords this broader right of access to all citizens, not access to just data subjects. Accordingly, if these statutes are deemed to be in conflict, it is the broader FOI Act that must not be deemed to nullify the narrower Data Collection Act, not the reverse.[15] Pursuant to the principles advanced by the

---

[15] The County argues that, by affording relief to McChrystal pursuant to the Data Collection Act, the Data Collection Act effectively nullifies the force and effect of the FOI Act employment discrimination exclusion. However, as discussed, although the two Acts address access to government information, they serve different purposes and therefore may eventuate in different results. Analogously, under federal law, no agency can rely on a FOIA exemption to withhold from an individual any record which is otherwise accessible under the Privacy Act. 5 U.S.C. § 552a(t)(1). If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the

County, if these Acts are viewed as being irreconcilable, the Data Collection Act must be deemed to express the transcendent legislative policy.

The County also argues that *Hinderliter* is inapplicable to this case, because Officer Hinderliter did not seek disclosure of government agency information but rather sought to enjoin the disclosure of such information. However, the Supreme Court of Virginia's decision in *Hinderliter* is nevertheless instructive. The Court analyzed what documents fall within the ambit of the Data Collection Act. It held that the internal police investigation report, analogous to the employment discrimination investigation report involved here, was subject to the provision of the Act. Hence, just as Hinderliter might seek mandamus relief to preclude the internal police investigative report, so too is McChrystal entitled to mandamus relief to gain access to the investigatory materials and report about his discriminatory misconduct.

The County questions whether a data subject is entitled to the names of employment discrimination complainants because the Data Collection Act incorporates the personal records exemption contained in § 2.2-3705.1(1). However the express language of that exemption makes plain that only a person who is the subject of the personnel record may gain access to that record. Therefore, a governmental employee or ex-employee, but not any other FOI Act petitioner, is entitled to gain access to his or her personnel file under the FOI Act. The incorporation of § 2.2-3705.1(1) into the Data Collection Act thus has the effect of limiting disclosure of such personnel records to data subjects who are the subject of the records but not other data subjects. The County's argument that a data subject would not be entitled to such records is unpersuasive.

## VII. Conclusion

For the reasons set forth herein, a writ of mandamus shall issue and be served on each of the defendants requiring them to afford access to McChrystal to all information related to the employment discrimination complaint, investigation, and reprimand that is the subject of his FOI Act and

---

documents must be released under the Privacy Act. *Martin v. Office of Special Counsel, Merit Systems Protection Board,* 260 U.S. App. D.C. 382, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

Data Collection Act requests. Defendants must also provide McChrystal with the names of people to whom this information has been disseminated. McChrystal shall be awarded his costs and reasonable attorneys' fees in accordance with Va. Code §§ 2.2-3713(D) and 2.2-3809.