## CIRCUIT COURT OF THE CITY OF NORFOLK

Virginian-Pilot
Media Cos., L.L.C., etc.

v.

City of Norfolk
School Board

December 28, 2010

Case No. (Civil) CL10-281

By Judge Norman A. Thomas

### I. *Background*

This matter comes before the Court on the Virginian-Pilot Media Companies, L.L.C.'s ("Plaintiff") Verified Petition for Mandamus, filed on April 23, 2010, pursuant to Virginia Code § 2.2-3713. (*See* Pet. 1.) On March 18, 2010, Steven G. Vegh, a reporter employed by Plaintiff, sent a Freedom of Information Act ("FOIA") request via electronic mail to Yvonne Young, the Norfolk Public Schools ("NPS") Chief of Staff. (Ex. 4.) The request, made pursuant to the Virginia Freedom of Information Act, Va. Code §§ 2.2-3700 through 2.2-3714, sought the following information.

[A]ll investigative notes, correspondence, and information assembled by the Panel performing the investigation of testing irregularities at the Lafayette-Winona Middle School commissioned by Superintendent Stephen C. Jones and the Norfolk School Board in December of 2009. . . .

[T]he full executive summary prepared and authored by the panel that describes the findings, conclusions, and recommendations resulting from its work.

(Ex. 4.)

Chief Deputy City Attorney Wayne Ringer responded to Vegh by letter dated March 24, 2010, declining to produce the majority of the requested documents (together, "the records") upon the following grounds:

[The records] are exempt from production under Virginia Code § 2.2-3705.1(1), -3705.1(2), -3705.1(3), and under -3705.4(1), consistent with federal laws protecting the confidentiality of student records, namely, the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1412(a)(8) and 1417(c).

We produce herewith from the Appendix of Exhibits the following, which we do not characterize as work-product, personnel or scholastic records: Exhibits A7 through A10 (e-mails); Exhibit I (a letter); Exhibit Q (reference materials).

We produce herewith from the chronologically arranged documents the following, which we do not characterize as work-product, personnel or scholastic records: Exhibits 3, 14, 15, 16, 22, 23, 24, 25, 26, 27, 36, 48, 55, 57, 59, 62 and 63.

(Ex. 5 at 1–2.)

As noted, the Norfolk School Board's position relies on certain specific FOIA exclusions, "consistent with" confidentiality provisions of the referenced federal laws. (*See* Ex. 5 at 1.) The parties have focused this litigation almost entirely upon the application of state law provisions and have not relied upon federal statutory law. The Court will thus rule only on the state law provisions.

The Court conducted hearings on May 6, 2010, July 26, 2010, and November 9, 2010, and the parties extensively briefed the legal issues in this matter in advance of each hearing. At the May 6th hearing, three persons testified for the Norfolk School Board ("Defendant"): Stephen C. Jones, then NPS Superintendent (*see* Tr. 39–80, May 6, 2010); Derrick A. Mungo, Assistant City Attorney (*see id.* 80–84); and Dr. Stephen Tonelson, then Chairperson of the Norfolk School Board (*see id.* 84–88). The Court

also received eight exhibits offered by the Plaintiff, six of which generally coincided with exhibits attached to the Plaintiff's Petition. (*See* Exs. 1–8.)

At the July 26th hearing, the Court agreed to review the total collection of documents and audio materials *in camera* to enable it to properly consider and correctly decide the matter. The Court entered a protective order to enable Plaintiff's counsel to also review the materials, and, in conjunction with counsels' schedules, set up a case timetable and briefing schedule. (*See* Order, Aug. 6, 2010.) The total number of documents copied by Defendant and submitted to the Court for review approximated twelve-thousand pages, along with a computer "thumb" (or "jump") drive containing recordings of several NPS employee interviews and other information. (*See* Ringer Ltr. 1–2, Aug. 10, 2010.) Plaintiff then narrowed the inquiry to approximately one-thousand specific pages of material and the accessible contents of the thumb drive. (*See* Barnhill Ltr. 1, Aug. 23, 2010; Docs. to be Produced in Resp. to FOIA Request 1–7.) The Court also incorporated several substantive rulings from the May 6th and July 26th hearings in the August 6th Order. (*See id.*)

During the July 26th hearing, the Court also made a number of preliminary interlocutory rulings and observations to guide the parties. For example, the Court noted that, at that time, it saw no viable claim that the documents and materials at issue were excluded from FOIA disclosure pursuant to the attorney-client privilege, *see* Va. Code Ann. § 2.2-3705.1(2) (2010), or, as "legal memoranda," "legal work product," or other work product "compiled specifically for use in litigation." *Id.* § 2.2-3705.1(3). The Court also noted that, although the FOIA exclusion of § 2.2-3705.1(3), as applied to §§ 2.2-3711(A)(1) and (A)(2), may potentially apply to the requested records, it did not then see potential applicability of that exclusion in relation to § 2.2-3711(A)(7).

In addition, the Court preliminarily concluded that Superintendent Jones's use of two persons from outside the NPS organizational hierarchy, Dr. Leigh L. Butler, Director of Teacher Education Services and Advising at Old Dominion University, and Mr. Mungo, in addition to Dr. Dennis Moore, a NPS professional employee, does not control the legal issues presented regarding the applicability of certain FOIA exclusions. The Court reached this conclusion upon consideration of the nature of the claimed FOIA exclusions, Jones's responsibilities following receipt of the October 14, 2009, Virginia Department of Education ("VDOE") report regarding the discovery of Virginia Grade Level Assessment ("VGLA") testing irregularities and events surrounding such testing at Lafayette-Winona Middle School ("LWMS") in the 2009–2010 academic year, and the specific tasks assigned to the panel.

The VGLA is:

an alternative Standards of Learning [("SOL")] assessment for students with disabilities. Students with disabilities whose Individualized Education Plans [("IEPs")] have identified them as unable to take the standard SOL tests may be eligible to be assessed instead with the [VGLA], which involves collecting their school work into a specialized binder and submitting it as evidence that the student has mastered certain academic content. Teachers are required to follow students' IEPs, which determine appropriate assessments. Teachers also are required to follow specific, state-mandated procedures for the Collection of Evidence for students who are taking the alternate assessments.

(Ex. 1 at 1–2.)

The Court also asked counsel to focus, among other things, on a number of specific legal issues:

(a) Do the materials constitute work product for use in an "active administrative investigation," pursuant to § 2.2-3705.1(3)?

(b) If so, was, or is, such investigation one that concerned a matter that is properly the subject of a closed meeting under §§ 2.2-3711(A)(1) and/or (A)(2)?

(c) If so, is the administrative investigation still "active" as that term might be reasonably interpreted by the Court or as subject to existing controlling or persuasive legal authority?

(d) If no longer "active" and subject to some measure of disclosure, then what methodology should be used, if legally appropriate to do so, to separate (i.e., as framed by the parties, to "redact") scholastic and personnel identifying information from the remainder of the materials?

In their subsequent briefs and arguments, counsel have fully addressed these and other legal issues presented in this significant case.

All of the records at issue represent compilations of the three-member panel formed by Superintendent Jones on or about December 17, 2009, to investigate the above-mentioned alleged VGLA "testing irregularities" at LWMS, related events, and involved parties. (*See* Ex. 1 at 1–2; Ex. 3 at 1–2.) The allegations came to light during 2009 (*see* Ex. 1 at 2), and the VDOE report elaborated upon them (*see, e.g.*, Ex. 3 at 2). That report cited NPS with respect to the VGLA testing issues at LWMS and criticized the school's leadership and teaching staff, as well as NPS's oversight of them and of its VGLA testing administration. (*See* Ex. 6 at 25–30, 34–35.)

As noted, Dr. Butler, Mr. Mungo, and Dr. Moore served on the panel, with Dr. Butler serving as lead investigator. (*See* Ex. 3 at 1.) Jones, in his December 17th letter to each panel member, outlined several aspects of the VDOE report, noting a perceived loss of public confidence resulting from the VGLA testing problems and the publicity surrounding them, and he charged the panel as follows:

> As we work through this process and develop strategies for the future, the administration of [NPS] understands many in our community have lost confidence in our school division because of the wide publicity of this issue. The integrity and fidelity of our instructional program is at the core of our mission as a school district.
>
> To that end, we must do everything possible to identify and address any and all issues related to inappropriate testing protocol and/or actions by any member of the staff. The dialogue between the district and the VDOE addressed the testing protocol issues. [NPS] must address the personnel issues, as well. . . .

The charge of the panel is as follows:

> Review the report from [VDOE], dated October 14, 2009.
>
> Identify all members of the NPS staff who were active participation in the administration of the VGLA at [LWMS].
>
> Gather any and all primary data and evidence necessary to fully understand the involvement of these individuals. This collection could be through internal reports, files and records, correspondence (including e-mails), or on-site interviews.
>
> Evaluate the performance and behaviors of the individuals involved.
>
> Prepare a comprehensive report for me by January 29, 2010, that completely outlines the committee's opinion of any wrong doing or inappropriate behaviors on the part of any staff member.

(*Id.* at 1–2.)

The panel conducted the investigation and produced a report of some seventy-three pages, in addition to exhibits. (*See* Ex. 7.) That report was presented to the Norfolk School Board ("School Board") on March 4, 2010. (*See* Tr. 83:6–8, May 6, 2010.) It addressed each of Jones's charges to the panel, except that the panel chose to defer the evaluation of specific individuals' performance and behavior to Jones and the School Board. (*See* Ex. 7 at 3.) The panel also drafted an eight-page Executive Summary of its

report (*see* Ex. 8) that Jones and the School Board ultimately rejected (*see, e.g.,* Tr. 43:25–44:10, May 6, 2010).

The School Board conducted closed meetings to consider the panel's report. (*Id.* 56:7.) Upon submission of its report, the panel met no further. (*Id.* 58:9–16.) However, its members remain available to discuss their work and findings and to participate as called in employee grievance proceedings and lawsuits arising from Jones's subsequent employee disciplinary actions. (*See id.,* 56:24–57:7, 58:9–16, 72:17–73:4.)

## II. *Analysis*

### A. *Virginia Freedom of Information Act Generally*

Virginia's Freedom of Information Act was enacted in 1968 to ensure citizens ready access to public records and free entry to meetings where "business of the people is being conducted." Va. Code Ann. § 2.2-3700 (2010). FOIA provisions are to be:

> liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exemption from public access to records or meetings shall be narrowly construed and no record shall be withheld or meeting closed to the public unless specifically made exempt pursuant to [the Act] or other specific provision of law.

*Id.* § 2.2-3700(B); *see also City of Danville v. Laird,* 223 Va. 271, 276, 288 S.E.2d 429, 431 (1982) ("The policy expressly stated in this section is that this chapter shall be liberally construed to enable citizens to observe the operations of government and that the exemptions shall be narrowly construed in order that nothing which should be public may be hidden from any person.").

FOIA requires all public records to be open to inspection and copying by any Virginia citizens, including representatives of newspapers and magazines with in-state circulation, subject to certain provisions excluding mandatory disclosure of records. *See* Va. Code Ann. § 2.2-3704(A) (2010); *id.* §§ 2.2-3705.1(1)–(13). Section 2.2-3705.1(3), upon which Defendant largely relies in refusing most of Plaintiff's FOIA request, provides that "[l]egal memoranda and other work product compiled specifically for use in litigation or for use in an active administrative investigation concerning a matter that is properly the subject of a closed meeting under § 2.2-3711" are excluded from mandatory disclosure. *Id.*

FOIA defines "public records" as:

> all writings and recordings that consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing . . . mechanical or electronic recording or other form of data compilation, however stored, and regardless of physical form or characteristics, prepared or owned by, or in the possession of a public body or its officers, employees, or agents in the transaction of public business.

Id. § 2.2-3701. Among other entities, FOIA defines "public body" as encompassing school boards, as well as any "committee, subcommittee, or other entity however designated, of the public body created to perform delegated functions of the public body or to advise the public body. It shall not exclude any such committee, subcommittee or entity because it has private sector or citizen members." *Id.* The Norfolk School Board constitutes a public body.

Within five business days of receiving a request, a public body subject to FOIA that possesses requested records must provide the records to the requestor or respond in writing to explain why the request cannot be partially or entirely granted. *See id.* §§ 2.2-3704(B)(1)–(4). A public body cannot be required to create a new record if the record does not already exist, but it may "abstract or summarize" information upon agreement with the requestor. *See id.* § 2.2-3704(D). A public body's failure to respond to a request for records is considered a denial of the request and constitutes a violation of FOIA. *See id.* § 2.2-3704(E).

Reimbursable costs in responding to such requests are subject to the following expense limits:

> A public body may make reasonable charges not to exceed its actual cost incurred in accessing, duplicating, supplying, or searching for the requested records. . . . Any duplicating fee charged by a public body shall not exceed the actual cost of duplication. . . . All charges for the supplying of requested records shall be estimated in advance at the request of the citizen.

*Id.* § 2.2-3704(F). For records maintained in an electronic database:

> Public bodies shall produce [such] nonexempt records . . . in any tangible medium identified by the requester. . . . No public body shall be required to produce records from an electronic database in a format not regularly used by the public body. However, the public body shall make reasonable efforts to provide records in any format under such terms and conditions as agreed between the requester and public body, including

the payment of reasonable costs. The excision of exempt fields of information from a database or the conversion of data from one available format to another shall not be deemed the creation, preparation, or compilation of a new public record.

*Id.* § 2.2-3704(G).

FOIA provides for enforcement through "mandamus or injunction, supported by an affidavit showing good cause." *Id.* § 2.2-3713(A). For cases involving a local public body, venue is proper in the general district court or circuit court of the city in which the public body has been elected or appointed and in which FOIA is alleged to have been violated. *See id.* § 2.2-3713(A)(1). Venue is thus proper in this Court.

The enforcement provision further provides:

A single instance of denial of the rights and privileges conferred by this chapter shall be sufficient to invoke the remedies granted herein. If the court finds the denial to be in violation of the provisions of this chapter, the petitioner shall be entitled to recover reasonable costs, including costs and reasonable fees for expert witnesses, and attorneys' fees from the public body if the petitioner substantially prevails on the merits of the case, unless special circumstances would make an award unjust. In making this determination, a court may consider, among other things, the reliance of a public body on . . . a decision of a court that substantially supports the public body's position.

*Id.* § 2.2-3713(D).

Significantly, FOIA requires the public body to "bear the burden of proof to establish an exemption by a preponderance of the evidence." *Id.* § 2.2-3713(E). Additionally, "[a]ny failure by a public body to follow [FOIA procedures] shall be presumed to be a violation of this chapter." *Id.*

This case focuses on what the School Board *must* produce, the minimum production required by law, and not what it "may" produce in its discretion. *See* §§ 2.2-3700, 2.2-3704, 2.2-3705.1. The Court's opinion and rulings will maintain this focus.

B. *Section 2.2-3705.1(3) Exclusion*

At the outset, the Court reiterates and incorporates herein without further discussion its July 26th rulings that the records are not excluded from FOIA disclosure as protected by the attorney-client privilege, *see* Va. Code Ann. § 2.2-3705.1(2) (2010), or as legal memoranda, legal work product, or other work product "compiled specifically for use in litigation,"

*id.* § 2.2-3705.1(3). (*See* Hr'g Bench Rulings, July 26, 2010.) Additionally, for the purposes of this matter, the Court must define "personnel records", *see* Va. Code Ann. § 2.2-3705.1(1) (2010), which, in addition to "scholastic records", *see id.* §§ 2.2-3701, 2.2-3705.4(1), it concludes were compiled, examined, and inquired into by the panel.

The parties do not dispute that the investigation involved scholastic records (*see, e.g.,* Br. in Supp. of Mand. 18–19; Def.'s Reply Br. Following *In Camera* Review of Records 10–13), including records that contain student-identifying information. *See* Va. Code Ann. §§ 2.2-3701, 2.2-3705.4(1) (2010). The parties do dispute whether the records now contain excludable personnel records, however. (*See, e.g.,* Br. in Supp. of Mand. 13–17; Def.'s Reply Br. Following *In Camera* Review of Records 13–14.) "Personnel records" under FOIA has not been statutorily defined or defined by the Supreme Court of Virginia. However, the Fairfax Circuit Court and the Supreme Court of Virginia, in dicta, have provided partial definitions for "personnel records" under FOIA. *See McChrystal v. Fairfax County Bd. of Supervisors,* 67 Va. Cir. 171, 182 (Fairfax 2005) ("[A]ll information gathered about an employee's employment in a permanent form constitutes a personnel record."); *Moore v. Maroney,* 258 Va. 21, 26, 516 S.E.2d 9, 12 (1999) (dictum) ("[U]nder certain circumstances, investigative materials dealing with employee misconduct may indeed be a 'standard' part of employee personnel records.").

The term also has been defined with respect to persons employed by a law-enforcement agency. *See* Va. Code Ann. § 15.2-1722(B) (2010). Virginia Code § 15.2-1722, which lists and defines certain records to be kept by sheriffs and chiefs of police in a context separate from FOIA, defines "personnel records" as "those records maintained on each and every individual employed by a law-enforcement agency which reflect personal data concerning the employee's age, length of service, amount of training, education, compensation level, and other pertinent personal information." *Id.* § 15.2-1722(B).

Guided by these definitions and the particular circumstances of this case, this Court considers "personnel records" as records of or pertaining to a specific, identifiable NPS employee and touching directly upon that individual's performance, discipline, attendance, income, social security number, tax-related matters, personal background, circumstances and education, and other information bearing upon the individual's employment relationship with NPS and for which either the employee or NPS may have a reasonable expectation of confidentiality. *See* Va. Code § 2.2-3705.1(1) (2010).

Because of the nature of the two categories of FOIA excludable records at issue, personnel and scholastic records, and their protected status under FOIA (and under other applicable law touching upon their privacy and confidentiality), this Court concludes that such status is *not* affected by the

outcome of any inquiry regarding whether Jones and/or the School Board committed *ultra vires* acts in forming, charging, or otherwise permitting the panel to convene and act under their imprimatur.

1. *The Records Constitute Work Product Compiled Specifically for Use in an Active Administrative Investigation That is Properly the Subject of a Closed Meeting under § 2.2-3711*

The panel's work and its compilation of the records constitute work product compiled specifically for use in an active administrative investigation concerning a matter properly subject to a closed meeting under § 2.2-3711. See Va. Code Ann. § 2.2-3705.1(3) (2010).

*"Active Administrative Investigation"*

First, and among those matters relating to the alleged VGLA testing irregularities, Jones's mandate sought investigation into personnel performance, personnel behavior, and identification of the persons involved in VGLA testing, including investigation as to any wrongdoing or substandard performance. (*See* Ex. 3 at 2.) Such work as that done by the panel, as charged and as evidenced by its proceedings, interviews, and compilations, did constitute an "administrative investigation" within the meaning of § 2.2-3705.1(3). *See, e.g.*, Va. Code §§ 2.2-3705.3(1)–(14) (2010) (setting forth FOIA exclusions relating to numerous types of public body administrative investigations); *id.* § 40.1-51.4:4 ("[T]he chief executive officer of a law-enforcement agency or the superintendent of a regional jail may . . . require an employee to submit to a lie detector test related to a particular internal *administrative investigation* concerning allegations of misconduct or criminal activity) (emphasis added); *Shenandoah Publ'g House v. City of Winchester*, 52 Va. Cir. 111, 114 (Winchester 2000) (describing potential investigation by a city manager into payroll and personnel issues in an office receiving partial funding from the city as an "administrative investigation"); *Woods v. Winchester School Bd.*, 49 Va. Cir. 330, 331 (describing investigation conducted by public school officials into whether a student made a bomb threat against the school as an "administrative investigation"). As the investigation would have been "active" during the time that it occurred, the panel's work, at least at one time, constituted an "active administrative investigation" under § 2.2-3705.1(3).

*Matters "Properly Subject to a Closed Meeting"*

Second, the panel investigated matters that are "properly subject to a closed meeting under § 2.2-3711." *Id.* § 2.2-3705.1(3). Section 2.2-3711(A)

(1) permits closed meetings involving the "assignment, appointment, promotion, performance, demotion, salaries, disciplining, or resignation of *specific . . .* employees of any public body[,]" *id.* (emphasis added), that is, meetings of or touching upon personnel records. Section 2.2-3711(A)(2) permits closed meetings involving the "[d]iscussion or consideration of . . . disciplinary matters or any other matters that would involve the disclosure of information contained in a scholastic record concerning any student of . . . any state school system[,]" *id.*, that is, meetings of or touching upon scholastic records. As noted, the panel was charged to, and did, investigate such matters. (*See, e.g.*, Ex. 3 at 2; Exs. 7, 8.) Moreover, the School Board did, in fact, conduct a closed meeting on the panel's report, which derived from the panel's investigation, including the records. The panel's administrative investigation thus concerned matters that are "properly subject to a closed meeting under § 2.2-3711" pursuant to § 2.2-3705.1(3).

### *"Work Product Specifically Compiled for Use"* in the Panel's Investigation

Third, the records compiled by the panel constitute "work product specifically compiled for use" in such an active administrative investigation. Va. Code Ann. § 2.2-3705.1(3) (2010). "Work product" generally is defined as "the produce of a party's investigation or communications concerning the subject matter of a lawsuit if made (1) to assist in the prosecution or defense of a pending suit, or (2) in reasonable anticipation of litigation." *Black's Law Dictionary* 1600–01 (7th ed. 1999). Such material includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs, which are prepared by an adversary's counsel with an eye toward litigation." *Commonwealth v. Edwards*, 235 Va. 499, 510, 370 S.E.2d 296, 302 (1988) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (citation omitted).

Here, however, the General Assembly specifically has applied the term "work product" to certain types of material "compiled specifically . . . for use in an active administrative investigation." Va. Code Ann. § 2.2-3705.1(3) (2010). As "work product" has been applied to material compiled outside of the context of litigation, *see id.*, it follows that non-attorneys can create and compile such work product. Section 2.2-3705.1(3) does not require work product to be created or compiled by attorneys or those acting under their direction; in fact, the legislature specifically provided protection for such non-legal work product by placing the word "other" before "work product." *See id.*

Moreover, a plain reading of "work product" necessitates a finding that the records fulfill that term's meaning. "In construing statutory language, [courts] are bound by the plain meaning of clear and unambiguous language." *White Dog Publ'g, Inc. v. Culpeper County Bd. of Supervisors*,

272 Va. 377, 386, 634 S.E.2d 334, 339 (2006) (*citing Cummings v. Fulghum,* 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001)). When separated from its legal context, as is the case in § 2.2-3705.1(3), "work product" means exactly that, the product, or materials and documents, of work, in this case, the panel's investigation. The Court thus concludes that the records compiled by the panel constitute "work product specifically compiled for use" in the panel's administrative investigation. Va. Code Ann. § 2.2-3705.1(3) (2010).

*2. The Panel's Administrative Investigation No Longer Is "Active," and as a Result, the Records Are No Longer Subject to the Exclusion of § 2.2-3705.1(3).*

The Court potentially could have determined that the panel's investigation is no longer "active" and dispensed with rulings on whether the records "constitute work product compiled specifically for use in an active administrative investigation that is properly the subject of a closed meeting under § 2.2-3711." However, the Court chose to analyze and decide each of those litigated issues. This approach creates the most complete record possible, provides guidance to the parties, will foster their mutual understanding of the Court's ultimate conclusions, and places the Court in an appropriate position to later decide ancillary issues presented by § 2.2-3713(D).

Jones empaneled Butler, Mungo, and Moore for specific purposes, for a limited time, and to assist him with specific responsibilities of his position. (*See* Ex. 3.) At the May 6th hearing, Jones stated that the panel members completed their assigned work and no longer are meeting under his auspices. (*See* Tr. 58:9–16, May 6, 2010.) At most, they now may give witness to their roles and work in the investigation in employee grievance proceedings or in litigation, but, under no circumstances, are they, as a group, conducting any semblance of an investigation. (*See, e.g.,* Tr. 58, 59, 65–66, 70, 71–73, 75, May 6, 2010.) Also, Jones subsequently acted upon the panel's conclusions, disciplining at least one NPS employee. (*See id.* 56:8–13.)

Additionally, the language of § 2.2-3705.1(3) appears clear and unambiguous on its face; the word "active" modifies only the term "administrative investigation", and *not* the term "litigation," which itself may be anticipated, or planned, active, or concluded. *See* Va. Code Ann. § 2.2-3705.1(3) (2010). When a statute is clear and unambiguous, courts must determine the intention of the legislature from the words used. *Arogas, Inc. v. Frederick County Bd. of Zoning Appeals,* 280 Va. 221, 228, 698 S.E.2d 908, 912 (2010) (*quoting Barr v. Town & Country Props.,* 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)) (citations omitted). Likewise, when construing a statute, courts "must apply its plain meaning, and . . . 'are not free to add [to] language, nor to ignore language, contained in statutes'."

*Id. (quoting BBF, Inc. v. Alstom Power, Inc.,* 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007)).

This exclusion, as described in the title of § 2.2-3705.1, appears among "exclusions of general application to public bodies." Va. Code Ann. § 2.2-3705.1 (2010). Indeed, as to subsection (3), pertaining to subjects of closed meetings under § 2.2-3711, there are numerous topics upon which a closed meeting may occur. *See id.* §§ 2.2-3711(A)(1) (personnel performance), 2.2-3711(A)(2) (scholastic records), 2.2-3711(A)(3) (real estate acquisition), 2.2-3711(A)(4) (individual privacy protection), 2.2-3711(A)(5) (business development), 2.2-3711(A)(6) (public funds investment), and 2.2-3711(A)(7)–(45) (other matters). All such topics may be sensitive in nature and reasonably require confidentiality for a time. However, upon completion of any administrative investigation into such a subject matter and public body action taken respecting such investigation's outcome, its work product may well lose any reasonable need for further confidentiality.

The applicable FOIA language does not state, or imply, that all such topics, or administrative investigations surrounding them, warrant a permanent cloak of confidentiality under § 2.2-3705.1(3). This is true regardless of whether some form of litigation may follow the public body's ultimate action. This conclusion is fully in keeping with FOIA's overarching purposes of openness in government business and operations. *See id.* § 2.2-3700(B).

Consideration of FOIA's § 2.2-3705.3 exclusions from disclosure respecting other types of administrative investigations does not mandate or implicate a contrary result. Each subsection, (1)–(14), relates to a distinct type of administrative investigation, and the statutory language variously addresses FOIA exclusions from disclosure of "records of all investigations," *id.* § 2.2-3705.3(1), "records of active investigations," *id.* §§ 2.2-3705.3(2), (4), (11), materials furnished "in confidence, with respect to an active investigation," *id.* §§ 2.2-3705.3(3), (13), "information taken from inactive reports," *id.* §§ 2.2-3705.3(3), (5), (9), and more, *see id.* §§ 2.2-3705.3(6)–(8), (10), (12), (14). In one instance, even the duration of a period of exclusion from disclosure is prescribed. *See id.* § 2.2-3705.3(14). This Court should not attempt to, and cannot, extrapolate from such an array of topics and process-specific FOIA exclusions, all crafted with language different from the exclusion of § 2.2-3705.1(3), a key to the correct statutory construction of this latter provision.

*McChrystal v. Fairfax County Bd. of Supervisors,* 67 Va. Cir. 171 (Fairfax 2005), exemplifies the difficulty in applying various § 2.2-3705.3 subsection language concerning "active investigations" to § 2.2-3705.1(3). In *McChrystal,* the court concluded that the "active investigation" language in § 2.2-3705.3(3) referred to how documents were gathered as opposed to the period of time within which it would be exempt from disclosure. *See id.* at 189–80. Section 2.2-3705.3(3) excludes from mandatory

disclosure "[i]nvestigator notes, and other correspondence and information, furnished in confidence with respect to an active investigation of individual employment discrimination complaints made to the Department of Human Resource Management or to such personnel of any local public body[.]" Va. Code Ann. § 2.2-3705.3(3) (2010). Even presuming that *McChrystal* was correctly decided, it involved a completely different subject matter and use of statutory language. Because *McChrystal* adjudicated an individual's FOIA request related to a reprimand received for workplace discrimination, *see id.* at 171, § 2.2-3705.3(3) controlled whether the records requested could be excluded from production. *See* Va. Code Ann. § 2.2-3705.3(3) (2010).

The court in *McChrystal* distinguished the exclusion for materials "furnished in confidence with respect to an active investigation," *id.*, with the provision's following sentence, which allows for disclosure of "information taken from inactive reports," *id.*, to determine a permanent exclusion from FOIA disclosure for such investigative materials. *See McChrystal*, 67 Va. Cir. at 180. In making this conclusion, the court focused on the different meaning of the word "report" from the meaning of "investigation," in that reports are necessarily passive. *See id.* Although the court in *McChrystal* concluded that the petitioner was entitled to the requested material for a different reason, it held that the petitioner would ordinarily only be entitled to the investigation's final report and not its investigative materials due to its analysis of § 2.2-3705.3(3). *McChrystal*, 67 Va. Cir. at 183. The court in *McChrystal* concluded that the public body failed to prove that investigators were notified that information gathered would be treated confidentially. *McChrystal*, 67 Va. Cir. at 183. Investigator notes must be "furnished in confidence" to invoke the § 2.2-3705.3(3) exclusion. *See* Va. Code Ann. § 2.2-3705.3(3) (2010).

Neither the language or context of that FOIA exclusion, nor the court's analysis of it, genuinely lends itself to resolution of this case. Instead, this Court must interpret the applicable section in light of the language appearing in it as crafted by the General Assembly, the context and object of the exclusion within FOIA's statutory scheme, and the overall purposes of the Act.

Defendant concedes that it has found no Virginia authority demonstrating that the panel's investigation is still "active," but cites four cases from other jurisdictions as persuasive authority. The School Board cites to *Christy v. Palm Beach County Sheriff's Office*, 689 So. 2d 1365, 1367 (Fla. App. 1997) (criminal investigation remains "active" through prosecutions or appeals); *United Gov't of Athens-Clarke County v. Athens Newspapers, L.L.C.*, 663 S.E.2d 248, 250–51 (Ga. 2008) (exemption for "pending [criminal] investigation" applies until file closed, even if investigation is long-dormant); *In re GlaxoSmithKline, P.L.C.*, 732 N.W.2d 257, 265 (Minn. 2007) ("inactive" civil investigations are publicly disclosable; investigation

is "active" until government decides not to pursue civil action, statute of limitations runs, or all appeals are exhausted); and *Riemers v. City of Grand Forks*, 723 N.W.2d 518, 523 (N.D. 2006) (exemption from disclosure applied for active criminal investigation applied where prosecution was incomplete). (*See* Def.'s Br. Following *In Camera* Review of Records 5–6.) Defendant cites these cases for the general proposition that, if any possibility remains of future litigation, including employee grievance proceedings, arising from an investigation, the investigation remains active, and thus materials compiled in it are exempt from disclosure under FOIA. (*See id.*) The cases cited by Defendant are inapposite, however, as those cases involved investigations that were considered active due to the possibility of further investigative work by a law enforcement or other established public entity pending completion of litigation, the potential for litigation, or appeals therefrom (*see* Pet.'s Reply Br. After *In Camera* Review of Docs. 9–11), as opposed to a finite, completed panel investigation conducted for the limited purpose of providing information and advice to a public official in his efforts to discharge his duties.

Based on its examination of the language of § 2.2-3705.1(3) and its consideration of the above-noted factors, the Court concludes that the records are not properly subject to FOIA exclusion under § 2.2-3705.1(3) once its administrative investigation ceased to be "active." Therefore, the School Board may only exclude from production to Plaintiff certain records among the total records compiled, personnel and scholastic records containing identifying information.

The Court rejects Plaintiff's argument that personnel records lose the benefit of any FOIA exclusion's applicability simply as a result of their compilation specifically for, and use, in an administrative investigation that no longer remains active. Such a result would thwart the specific protective effects of § 2.2-3705.1(1), and neither any language in the Act nor any legal precedent offered or known to the Court would support such a result. Even § 2.2-3705.1, in permitting *discretionary* disclosure of records such as those at issue in this case forbids such discretion "where such disclosure is prohibited by law." Va. Code § 2.2-3705.1 (2010). *See also id.* §§ 2.2-3705.2–7 (2010). Section 2.2-3705.1(1) constitutes just such a prohibition on disclosure.

### 3. *The School Board is Not Required to Redact Personnel Records and Scholastic Records and is Not Required to Produce Them*

The School Board must provide the requested records to the Virginian-Pilot, except for those records properly classified as "scholastic records containing information concerning identifiable individuals[,]" Va. Code Ann. § 2.2-3705.4(1) (2010), and "personnel records containing information concerning identifiable individuals." *Id.* § 2.2-3705.1(1).

Plaintiff does not seek such scholastic records; however, it seeks production of them with deletion or excision ("redaction") of information identifying students. As noted, Plaintiff seeks all personnel records contained in panel records, but the Court has rejected Plaintiff's arguments for them. As an alternative, Plaintiff apparently would seek production of personnel records redacted to excise employee identifying information.

The parties have vigorously litigated the issue of mandatory redaction of information exempt from disclosure, and, in ruling thereon, the Court maintains focus on the issue of whether FOIA *requires* redaction of records subject to exclusion when a public body chooses not to disclose all or part of such record according to FOIA's discretionary provisions. Plaintiff argues that § 2.2-3704(B) should be interpreted to *require* such redaction. The Court disagrees with this position. Indeed, § 2.2-3704(B)(1) allows full withholding by a public body when disclosure is prohibited by law or discretion is not exercised. As discussed above, §§ 2.2-3705.1(1) and 2.2-3705.4(1) represent such prohibitions.

Section 2.2-3704(B)(2) permits "requested records" to be withheld in part due to legal prohibition against disclosure. *Id.* § 2.2-3704(B)(2). It speaks in the plural form and does not address redaction of individual records. *See id.* The last sentence of § 2.2-3704(B)(2) does touch upon "when a portion of a requested record is withheld," however. *Id.* It provides that in such an instance, only the portion "to which an exemption applies" may be deleted or excised and that the public body "shall release the remainder of the record." *Id.* The Court does not read this language to, in every instance, *require* a public body to redact an individual record subject to a FOIA exclusion. Its language is not sufficiently direct and clear to reach any such result. Instead, this language requires only that, when a public body chooses in its discretion to engage in redaction, i.e., deletion or excision, it must limit itself to removal or obliteration of excludable information. *See id.* Read in this way, the language of § 2.2-3704(B)(2) harmonizes with the language of §§ 2.2-3704(B)(1), (3), and (4), which deal with legal prohibition from or hardship or impossibility of disclosure by a public body. *See also* §§ 2.2-3704(D), (G). The parties agree that FOIA provisions regarding costs do not provide for public bodies to recover costs for the time or expenses required to make redactions. *See Albright v. Woodfin*, 68 Va. Cir. 115, 118 (Nelson County 2005) (holding that a public body cannot recover its costs under Section 2.2-3704(F) for redacting or reviewing documents).

Thus, the Court finds no specific requirement of "redaction" within FOIA with respect to minimum disclosure and turns to the question whether, in keeping with the purposes of FOIA, it must, or appropriately should, judicially impose one. "When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not

mean what it actually has stated." *Williams v. Commonwealth*, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003) (citing *Mozley v. Prestwould Bd. of Dirs.*, 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002); *Caprio v. Commonwealth*, 254 Va. 507, 511–12, 493 S.E.2d 371, 374 (1997)). As noted above, the Court finds that the language of § 2.2-3704(B)(2) is unambiguous; it does not require that, in responding to a FOIA request, all records containing information exempt from disclosure must, upon proper redaction, be produced. This Court is thus bound by the plain meaning of the language of § 2.2-3704(B)(2).

Moreover, having concluded that the General Assembly did not provide for such a requirement, to impose it would constitute pure judicial lawmaking. "Courts are not permitted to add language to a statute nor are they permitted to accomplish the same result by judicial interpretation." *Shackleford v. Commonwealth*, 262 Va. 196, 213, 547 S.E.2d 899, 909 (2001) (internal quotation marks omitted); see also *Burlile v. Commonwealth*, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001). To impose a redaction requirement undoubtedly would lead to numerous disagreements between requestors and public bodies regarding the extent of redactions and would foment additional litigation. Additionally, the imposition of a redaction requirement would impose unknown burdens on the public purse to fund the resources of time and effort spent in making deletions and excisions. To avoid litigation, the Act seeks prompt public body compliance along relatively clear parameters and effectively punishes public bodies that violate the Act, imposing expenses, attorney's fees, and other remedies. Litigation and its attendant expenses and attorney's fees in disputes involving redaction issues would retard the expectation of prompt public body disclosure of requested records. These considerations militate heavily against judicial imposition of a redaction requirement, and this Court declines to do so.

Thus, the School Board properly may exclude from production to Plaintiff *any* individual record properly considered *in toto* or in part a scholastic record or a personnel record, containing information concerning identifiable individuals, under §§ 2.2-3705.1(1) and 2.2-3705.4(1).

The Court anticipates that it will provide to counsel, by January 31, 2011, an Appendix to Opinion, which is to be received subject to the protective provisions of this Court's August 6, 2010, Order, pending final order in this case and any appellate resolution thereof. That appendix will specify those records subject to disclosure and those that are subject to exclusion from disclosure, with notations of the applicable FOIA exclusions.

The Court promptly will enter an Order to effectuate the rulings of this letter opinion, and counsel signatures will be dispensed with under Rule 1:13. However, the objections of each party hereto hereby are noted and preserved. The Clerk will provide a certified copy of said Order to counsel.